**MATTHEW Q. CALLISTER, ESQ**   **E-FILED: October 1, 2012**
Nevada Bar No. 001396
mqc@call-law.com
**THOMAS N. BECKOM, ESQ**
Nevada Bar No. 12554
beckomt@call-law.com
CALLISTER & ASSOCIATES, LLC
823 Las Vegas Blvd., South, Suite 500
Las Vegas, NV 89101
Telephone: (702) 385-3343
Facsimile: (702) 385-2899
E-Mail: beckomt@call-law.com
Attorney for Debtor, *Arvind and Alka Agarwal*

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>ARVIND AGARWAL and ALKA AGARWAL,<br><br>        Debtors. | Case No.  11-17763-lbr<br>Chapter 11<br><br>Hearing date: October 17, 2012<br>Time:        2:30pm |

### SECOND AMENDED DISCLOSURE STATEMENT PROPOSED BY ARVIND AND ALKA AGARWAL

*Table of Contents*

I.      INITIAL WARNING AND DISCLAIMERS
II.     INTRODUCTION
III.    DESCRIPTION OF THE DEBTOR'S BUSINESS
IV.     DEFINITION AND TREATMENT OF CLAIMS WITHIN THE PLAN
V.      CONFIRMATION OF THE PLAN
VI.     MEANS OF IMPLEMENTING THE PLAN
VII.    EFFECT OF THE CONFIRMATION OF THE PLAN
VIII.   OTHER PLAN PROVISIONS

1

2

**EXHIBITS:**

3

4

EXHIBIT A:                    PROPOSED PLAN OF REORGANIZATION

5

EXHIBIT B:                    LIST OF REAL PROPERTIES

6

EXHIBIT C:                    THE DEBTOR'S LIQUIDATION ANALYSIS

7

EXHIBIT D:                    THE DEBTOR'S FEASIBILITY ANALYSIS AND FIVE-
                              YEAR PROJECTED CASH-FLOW ANALYSIS

8

9

EXHIBIT E:                    DEBTOR'S FEASIBILITY ANALYSIS

10

EXHIBIT F:                    DEBTOR'S LIST OF LEASES AND EXECUTORY
                              CONTRACTS

11

12

EXHIBIT G:                    DEBTOR'S ANALYSIS AS TO EFFECT OF CRAM-DOWN

13

EXHIBIT H:                    COPIES OF MONTHLY OPERATING REPORTS

14

EXHIBIT I:                    COPIES OF CURRENT RESIDENTIAL LEASES

15

EXHIBIT J:                    MISCELLANEOUS SUPPORTING DOCUMENTATION

16

17

18

19

20

21

22

23

24

25

26

27

28

## INITIAL WARNINGS AND DISCLAIMERS:

**WARNING:**

**ONLY THE CONFIRMED PLAN WILL CONTROL YOUR RIGHTS AND THE RIGHTS OF THE DEBTOR.  WHERE THE DISCLOSURE STATEMENT AND THE PLAN CONFLICT, THE PLAN SHALL CONTROL.**

**YOUR RIGHTS MAY BE AFFECTED.  YOU SHOULD READ THE PLAN TOGETHER WITH THIS DISCLOSURE STATEMENT CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY. IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.**

**DISCLAIMER:**

**THE COURT APPROVED THIS DISCLOSURE STATEMENT AS CONTAINING ADEQUATE INFORMATION TO ENABLE PARTIES AFFECTED BY THE PLAN TO MAKE AN INFORMED DECISION ABOUT ITS TERMS.  THE COURT HAS NOT YET DETERMINED WHETHER THE PLAN MEETS THE LEGAL REQUIREMENTS FOR CONFIRMATION, AND THE FACT THAT THE COURT APPROVES THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE AN ENDORSEMENT OF THE PLAN BY THE COURT, OR A RECOMMENDATION THAT IT BE ACCEPTED.**

**DISCLAIMER**

**THIS DISCLOSURE STATEMENT IS FOR ILLUSTRATIVE PURPOSES ONLY SO AS TO PROVIDE YOU WITH SUFFICIENT INFORMATION SO THAT YOU MAY MAKE REASONABLY INFORMED DECISION AS TO YOU RIGHTS AND AS TO THE PLAN.  THIS DISCLOSURE STATEMENT WILL NOT BIND IN ANY WAY THE DEBTOR TO ANY COURSE OF ACTION AND IS NOT A CONTRACT OR AGREEMENT OF ANY KIND.**

## II. INTRODUCTION:

This is the Disclosure Statement ("Disclosure Statement") in the Chapter 11 case of ARVIND and ALKA AGARWAL("Debtors"). The purpose of this Disclosure Statement is to fully inform you about the Debtor, the Debtor's Plan of Reorganization ("Plan") and your rights so that you may have the necessary information to make decisions regarding your right in relation to the Debtor and his Plan.  A full copy of the Plan is attached to this Disclosure Statement as Exhibit A. **SEE EXHIBIT A-THE DEBTOR'S PLAN OF REORGANIZATION.**

The proposed distributions under the Plan are discussed at pages 7 through 17  of this Disclosure Statement.

### A.    SUMMARY OF PROPOSED DISTRIBUTIONS:

Debtor's retaining security interests in real property will be paid at the current valuation of their secured claim at the interest that was binding on the date of the contract. Priority claims will be paid in full over 60 months. Unsecured claims will receive a pro rata distribution of disposable income for a period of 5 years. The monthly distribution of disposable income varies depending on the status of the Debtor's asset 537 Calcaterra Circle, Las Vegas, NV 89119 at the time of plan confirmation. A portion of the disposable income will be used to be priority tax claims as outlined in the plan as well a priority administrative expenses.

This Disclosure Statement describes:

1.    The Debtor an significant events during the bankruptcy case;
2.    How the Plan proposes to treat claim or equity interest of the type you hold (i.e. what you will receive on your claim or equity interest if the plan is confirmed),
3.    Who can vote on or object to the Plan;
4.    What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan;
5.    Why ARVIND and ALKA AGARWAL believe the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation; and
6.    The effect of confirmation of the Plan.

**B.    THE PURPOSE OF THIS DISCLOSURE STATEMENT AND THE PURPOSE OF THE PLAN OF REORGANIZATION**.

The purpose of this Disclosure Statement is to provide adequate information to enable the parties affected by the Plan to make reasonably informed decision as to the term of the Plan. This Disclosure Statement clarifies how the Plan proposes to treat your claim, and it describes your right in the Plan and your rights in this bankruptcy process. It describes the Debtor's financial circumstances and the significant events during the bankruptcy case. It clarifies how the Plan proposes to treat your claim (e.g. what you will receive for your claim when the Plan is confirmed). It describes who can vote or object to the Plan. It describes what factors the Bankruptcy Court ("Court") will consider when deciding whether or not to confirm the Plan. It describes how and why the Plan is feasible, and how your treatment under the Plan compares to what you would receive for your claim in a hypothetical liquidation. Finally, it describes the effect of the confirmation of the Plan.

Please note: THIS DISCLOSURE STATEMENT DESCRIBES THE PLAN. **BUT IT IS THE CONFIRMED PLAN ITSELF THAT WILL ESTABLISH AND CONTROL YOUR RIGHTS.** Where the Plan and the Disclosure statements conflict, the Plan controls and supercedes the Disclosure Statement. **BE SURE TO READ THE PLAN CAREFULLY.**

The purpose of the Plan is to set forth the legally binding terms, rights, and treatments of claims in the Debtor's reorganization. As required by the Bankruptcy Code, the Plan places claims in separate classes and describes the treatment each class will receive. The Plan also state whether each class of claims is impair or unimpaired. Your recovery and rights are set forth and established by the Plan.

**III.   DESCRIPTION OF THE DEBTOR'S BUSINESS**

**A.      THE LEGAL TYPE OF BUSINESS ENTITY/ MANAGEMENT OF THE DEBTOR**

**BEFORE AND DURING THE BANKRUPTCY.**

_____Under the law, the Debtor's (husband and wife) together are considered as one single individual person. The Debtor's estate is to be treated as a sole proprietorship wherein the Debtors are unified as one single individual for assets and debts acquired during their marriage. In some cases, the Debtors may each be considered separate entities for assets and debts acquired before their marriage. There are no officers, directors, or managers other than the Debtors.

During the period to the date on which the Debtor's filed the bankruptcy, the Debtors operated as sole proprietors. During this bankruptcy until the confirmation of the Plan, the Debtors will continue to manage their business as a sole proprietorship. After the effective date of the order confirming the Plan, the Debtors will continue to manage their business.

**B.        DESCRIPTION AND HISTORY OF THE DEBTOR'S BUSINESS**

_____The Debtors are in the business of renting residential real properties to Las Vegas area tenants for the tenants living quarters. Alka Agarwal is currently employed at Macy's and makes approximately $1,600.00 per month. _See_ Ex. 1. Arvind Agarwal is currently unemployed however he is actively searching for other employment opportunities. _See_ Ex. 2 This constitutes the entirety of the Debtor's Business and these sources are all the sources of the Debtors' income. As an individual, the Debtors do not have any insiders with exception of themselves.

**C.        CURRENT AND HISTORICAL EVENTS AND CONDITIONS**

**        i.        IDENTITY AND FAIR MARKET VALUE OF THE DEBTOR'S ASSETS:**

_____The identity and fair market value of the estate's assets are listed in **Exhibit B.** The value of the assets is based on the appraisals performed for each property and updated if necessary in connection with the approval of the Plan. Copies of the appraisals are available upon request. If an asset's value is being reduced further since the Motions to Value, then appraisals were forwarded to each secured lender in this case with respect to the related collateral. In addition, the Debtor reserves the right to re-appraise the properties prior to confirmation of the plan to reflect the value of the home at that time. Therefore, if you are a secured lender, your secured claim may change in connection with confirmation of the Plan if the value of your collateral has fallen since the approval of the Motion to Val

**        If you are a secured creditor and intend to object to any revised valuation of your collateral based on a reappraisal, you must file an objection to the Plan. Upon request, the Debtor will provide copies of the appraisals of his properties to secured creditors who have interest in the properties.**

**        ii.        FINANCIAL STATEMENTS:**

The Debtor's Monthly Operating Reports through the pendancy of this case are attached hereto as Exhibit "H".

**        iii.        EVENTS LEADING TO DEBTOR'S CHAPTER 11 FILING:**

_____The general downturn in the Las Vegas Real Estate and Rental Market ultimately lead to Debtor's Chapter 11 filing. The rental market was no longer lucrative enough to allow debtor to

cover their monthly expenses concerning his investment properties. Furthermore two (2) of the Debtor's commercial apartment complexes (537 and 529 Calcaterra Cirle, Las Vegas, NV) were severely vandalized. Debtor is currently involved in contentious insurance litigation over 529 Calcaterra Circle and has settled out of court concerning 537 Calcaterra Circle. However prior to the filing of this bankruptcy; the Debtor was unable to meet his debt obligations due to these 2 units being uninhabitable.

### iv.    SIGNIFICANT EVENTS DURING THE BANKRUPTCY CASE:

_____The following is a recount of the significant event which occurred through the course of the Debtor's Bankruptcy.

1.    On or about May 19, 2011 Debtor filed a voluntary Chapter 13 Petition with this Honorable Court. *See* Doc 1
2.    On or about July 13, 2011 Bank of the West filed a Motion for Relief from Stay against the Debtor's primary residence.
3.    Following this, Debtor's filed a Motion to Convert from Chapter 13 to Chapter 11. *See* Doc 26
4.    Debtor's also employed Special Counsel William Dresser to litigate several outstanding insurance claims. *See* Doc 30
5.    Debtor's case was converted from a Chapter 13 to a Chapter 11 on or about September12, 2011. *See* Doc 44
6.    Debtor and Debtor's counsel attend the 341 Meeting of the Creditors on or about October 13, 2011.
7.    Debtor's Counsel, Matthew Q. Callister, Esq
8.    Debtor's Counsel filed Motion to Value Debtor's Real Property on or about October 12, 2011 *See* Doc 63, 64, 65, 66, & 67.
9.    U.S. Bank filed a Motion for Relief from Stay on or about June8, 2012
10.    Debtor's Counsel filed an opposition on or about June 27, 2012.
11.    Debtor's also filed a Motion to Approve Settlement Agreement and Motion to Use Cash Collateral stemming from a settlement of an insurance dispute by Special Counsel William Dresser, Esq.
12.    Debtor's filed a Motion to Use Cash Collateral on or about July 5, 2012.
13.    Debtor's Counsel filed an Interim Status Report on July 6, 2012.
14.    U.S. Bank's Motion for Relief from stay was granted on July 17, 2012. *See* Doc 149
15.    Debtor's withdrew their Motion t o Approve Settlement Agreement and Motion to Use Cash Collateral due to a change in factual circumstances on or about August 8, 2012. *See* Doc 168, 169.
16.    Debtor's filed a Motion to Value Collateral on 537 Calcaterra Circle, Las Vegas Nevada on or about August 24, 2012 set for hearing on September 26, 2012. *See* 176.
17.    Debtor's filed an Interim Application for Compensation for Callister & Associates on or about September 10, 2012 for $33,166.25 in fees and $2,693.55 in costs. *See* 182
18.    Debtor's motion for Use of Cash Collateral was granted in part and denied in part.
19.    U.S. Bank filed a opposition to Debtor's Motion to Value on or about September 12, 2012.
20.    U.S. Bank filed an objection to the Debtor's First Disclosure Statement on or about September 12, 2012. *See* Doc 187.

### IV.    DEFINITION AND TREATMENT OF CLAIMS WITHIN THE PLAN.

**A.      CLASS OF CLAIMS AND THEIR TREATMENT UNDER THE PLAN:**

_____The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan.  For a detailed analysis and description of the individual claims within each class, **see Exhibit A Plan of Reorganization**.

**i.      CLASSES OF SECURED CLAIMS:**

_____Allowed secured claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to set off) to the extent allowed as a secured claim under 11 USC 506.  If the value of the collateral or setoff securing the creditor's claim is less than the amount of the creditor's allowed claim the deficiency will be classified as an unsecured claim in Class 10.  All secured claims are placed in separate classes pursuant to rulings under the common law. *In re Keck, Mahin & Cate* 241 B.R. 583, 590 (Bankr. N.D. Ill 1999)

**1.      CLASS 1: THE ALLOWED AND IMPAIRED CLAIM OF CITY NATIONAL BANK ON DEBTOR'S INVESTMENT PROPERTY LOCATED AT 529 CALCATERRA CIRCLE, LAS VEGAS, NV 89119**

Class 1 consists of the mortgages secured by the Debtor's investment properties which the debtor will retain.  For convenience and clarity Class 1 is divided in subclasses and will be entitled to vote on the plan as they are impaired.

The remainder of the Class 1 claim that is not secured will be unsecured and treated as a Class 10 general unsecured claim.  Class1 is an impaired class.  Therefore, the holder of the Class 1 claim is entitled to vote to accept or reject the Plan. A summation of class treatment is as follows:

| Class #: | Description of Claim: | Impairment | Treatment Under the Debtor's Plan of Reorganization: |
|---|---|---|---|
| 1. | Secured Claim of City National Bank on the Debtor's Investment Real Property.  Allowed Secured Amount: $95,000.00  Prepetition Arrearage and Cure Payment: $0.00 | Impaired | Property 1:  529 Calcaterra Circle Las Vegas, NV 89119  Principal Balance of $95,000.00 with a 5.00% fixed interest rate and taxes and insurance impounded.  Mortgage Payment of $787.80 with taxes and insurance impounded |

**2.      CLASS 2: THE ALLOWED AND IMPAIRED CLAIM OF U.S. BANK ON DEBTOR'S INVESTMENT PROPERTY LOCATED AT 537 CALCATERRA CIRCLE, LAS VEGAS, NV 89119**

Class 2 consists of the mortgages secured by the Debtor's investment property at 537

7

Calcaterra Circle, Las Vegas, NV  which the  debtor will retain.

The remainder of the Class 2 claim that is not secured will be unsecured and treated as a Class 10 general unsecured claim. It is important to note that the automatic stay on this particular asset has been lifted an furthermore the asset is subject to a valuation dispute.  In the interest of clarity Debtor outlines two potential plan treatments based on (1) the Debtor's valuation; and (2) the Creditor's Valuation.  Furthermore given the fact that there is a pending foreclosure proceeding it is highly possible that the income and related expenses relating expenses may not be part of this plan of reorganization.  In event the asset is lost both Exhibit "D" (the Cash Flow Analysis) and Class 10 (Unsecured Creditor Claims) will be altered.  Based on these facts, Debtor has attached hereto 3 different possible Cash Flow analysis stemming from this property based on (1) the Debtor's Valuation; (2) the Secured Creditor's Valuation; and (3) a loss of the asset completely.  As such Debtor lists three potential plan treatments for the asset based on three possibly contingencies as follows:

**a.    Potential Treatment #1; Retention of Asset, Valuation Based on Debtor's Appraisal**

| Class #: | Description of Claim: | Impairment | Treatment Under the Debtor's Plan of Reorganization: |
|---|---|---|---|
| 2(a). | Secured Claims of the Debtor's Investment Real Property.<br><br> Allowed Secured Amount: $95,000<br><br>Prepetition Arrearage and Cure Payment: $0.00 | Impaired | Property 2:<br><br>537 Calcaterra Circle Las Vegas, NV 89119<br><br>Principal Balance of $95,000.00 with a 5.00% fixed interest rate and taxes and insurance impounded.<br><br>Mortgage Payment of $797.69 with taxes and insurance impounded |

///
///
///
///
///
///
///
///
///
///
///

8

///
///
///

b.    **Potential Treatment #2; Retention of Asset, Valuation Based on Secured Creditor's Appraisal**

| Class #: | Description of Claim: | Impairment | Treatment Under the Debtor's Plan of Reorganization: |
|---|---|---|---|
| 2(b). | Secured Claims of the Debtor's Investment Real Property.<br><br>Allowed Secured Amount: $140,000.00<br><br>Prepetition Arrearage and Cure Payment: $0.00 | Impaired | Property 2:<br><br>537 Calcaterra Circle Las Vegas, NV 89119<br><br>Principal Balance of $140,000.00 with a 5.00% fixed interest rate and taxes and insurance impounded.<br><br>Mortgage Payment of $1,039.69 with taxes and insurance impounded |

c.    **Potential Treatment #3; Loss of Asset**

| Class #: | Description of Claim: | Impairment | Treatment Under the Debtor's Plan of Reorganization: |
|---|---|---|---|
| 2(c). | Secured Claims of the Debtor's Investment Real Property.<br><br>Allowed Secured Amount: $140,000.00<br><br>Prepetition Arrearage and Cure Payment: $0.00 | Impaired | Property 2:<br><br>537 Calcaterra Circle Las Vegas, NV 89119<br><br>Property Sold at Foreclosure; Deficiency Treated as Unsecured Debt and Paid Pro Rata in Class 10. |

3.    **CLASS 3: THE ALLOWED AND IMPAIRED CLAIM OF BANK OF AMERICA, SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING ON DEBTOR'S INVESTMENT PROPERTY LOCATED AT 3370 SOUTH PECOS RD. LAS VEGAS, NV**

Class 3 consists of the mortgages secured by the Debtor's investment property at 3370 South Pecos Rd., Las Vegas, NV which the debtor will retain.

The remainder of the Class 3 claim that is not secured will be unsecured and treated as a

Class 10 general unsecured claim. Class1 is an impaired class. Therefore, the holder of the Class 3 claim is entitled to vote to accept or reject the Plan. A summation of class treatment is as follows

| Class #: | Description of Claim: | Impairment | Treatment Under the Debtor's Plan of Reorganization: |
|---|---|---|---|
| 3. | Secured Claims of the Debtor's Investment Real Property. Allowed Secured Amount: $94,000.00 Prepetition Arrearage and Cure Payment: $0.00 | Impaired | Property 3:<br><br>3370 South Pecos Rd. Las Vegas, NV<br><br>Principal Balance of $94,000.00 with a 5.00% fixed interest rate and taxes and insurance impounded.<br><br>Mortgage Payment of $623.66 with taxes and insurance impounded |

4.      **CLASS 4: THE ALLOWED AND IMPAIRED CLAIM OF BAC HOME LOANS SERVICING ON DEBTOR'S INVESTMENT PROPERTY LOCATED AT1852 ARBOL VERDE WAY, LAS VEGAS, NV 89119**

Class 4 consists of the mortgages secured by the Debtor's investment property at1852 Arbol Verde Rd., Las Vegas, NV which the debtor will retain.

The remainder of the Class 4 claim that is not secured will be unsecured and treated as a Class 10 general unsecured claim. Class1 is an impaired class. Therefore, the holder of the Class 4 claim is entitled to vote to accept or reject the Plan. A summation of class treatment is as follows:

| Class #: | Description of Claim: | Impairment | Treatment Under the Debtor's Plan of Reorganization: |
|---|---|---|---|
| 4. | Secured Claims of the Debtor's Investment Real Property. Allowed Secured Amount: $44,000.00 Prepetition Arrearage and Cure Payment: $0.00 | Impaired | Property 4:<br><br>1852 Arbol Verde Way Las Vegas, NV 89119<br><br>Principal Balance of $44,000.00 with a 5.00% fixed interest rate and taxes and insurance impounded.<br><br>Mortgage Payment of $335.90 with taxes and insurance impounded |

**5.    CLASS 5: THE ALLOWED AND IMPAIRED CLAIM OF BANK OF AMERICA, N.A. ON DEBTOR'S INVESTMENT PROPERTY LOCATED AT 3939 GREENLEAF DR., LAS VEGAS, NV 89120**

Class 4 consists of the mortgages secured by the Debtor's investment property 3939 GREENLEAF DR. which the debtor will retain.

The remainder of the Class 4 claim that is not secured will be unsecured and treated as a Class 10 general unsecured claim. Class1 is an impaired class. Therefore, the holder of the Class 4 claim is entitled to vote to accept or reject the Plan. A summation of class treatment is as follows

| Class #: | Description of Claim: | Impairment | Treatment Under the Debtor's Plan of Reorganization: |
|---|---|---|---|
| 5. | Secured Claims of the Debtor's Investment Real Property. Allowed Secured Amount: $100,000.00 Prepetition Arrearage and Cure Payment: $0.00 | Impaired | Property 5:<br><br>3939 Greenleaf Drive Las Vegas, NV 89120<br><br>Principal Balance of $100,000.000 with a 5.00% fixed interest rate and taxes and insurance impounded.<br><br>Mortgage Payment of $677.70 with taxes and insurance impounded |

**6.    CLASS 6- SECURED CLAIM OF AURORA LOAN SERVICES, LLC ON DEBTOR'S PRIMARY RESIDENCE**

Class 6 consists of the first mortgage secured by the debtor's primary residence commonly known as 1582 Galena Dr., San Jose, CA 95121. This particular Debt is fully secured and will be paid according to the pre petition loan agreement

///
///
///
///
///
///
///
///
///
///
///
///
///
///

11

///
///

| Class #: | Description of Claim: | Impairment | Treatment Under the Debtor's Plan of Reorganization: |
|---|---|---|---|
| 6 | Secured Claims of the Debtor's Investment Real Property.<br><br>Valuation: $325,000.00<br><br>Allowed Secured Amount: $205,548.19<br><br>Prepetition Arrearage and Cure Payment: $0.00 | Impaired | 1582 Galena Dr. San Jose, CA 95121<br><br>New Principal Balance of $205,548.19 with a 5.00% fixed interest rate and taxes and insurance impounded. Any arrears will be added to the principal balance and paid over the life of the loan thereby extending the term.<br><br>Mortgage Payment of $2,156.84 with taxes and insurance impounded |

///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///

///
///

**7.    CLASS 7- SECURED CLAIM OF BANK OF THE WEST ON DEBTOR'S PRIMARY RESIDENCE**

Class 7 consists of the second mortgage secured by the debtor's primary residence commonly known as 1582 Galena Dr., San Jose, CA 95121

| Class #: | Description of Claim: | Impairment | Treatment Under the Debtor's Plan of Reorganization: |
|---|---|---|---|
| 7. | Secured Claims of Bank of the West on the Debtor's Primary Residence.<br><br>Valuation: $325,000.00<br><br>Allowed Secured Amount: $191,610.21<br><br>Prepetition Arrearage and Cure Payment: $0.00 | Impaired | 1582 Galena Dr. San Jose, CA 95121<br><br>Paid according to the terms of the pre-petition contract.<br><br>Mortgage Payment of $667.74 |

**8.    CLASS 8- SECURED CLAIM OF REPUBLIC SERVICES**

Class 8 is the secured claim of Republic Services.  This claim will be paid in full over 60 months.

| Class #: | Description of Claim: | Impairment | Treatment Under the Debtor's Plan of Reorganization: |
|---|---|---|---|
| **8.** | Secured Claim of Republic Service<br><br>Amount: $316.76 | Impaired | Paid $5.27 a Month for 60 Months until Paid in Full |

**9.    CLASS 9- SECURED CLAIM OF GREENTREE HOMEOWNERS ASSOCIATION**

Class 9 is the secured claim of Greentree Homeowners Associations against the Debtor's real property located at 1852 Arbol Verde, Las Vegas, NV.  This claim will be paid in full over 5 years as outlined below.

13

| Class #: | Description of Claim: | Impairment | Treatment Under the Debtor's Plan of Reorganization: |
|---|---|---|---|
| 9. | Secured Claim of Greentree Homeowners Association<br><br>Amount: $14,252.52 | Impaired | Paid $237.55 a Month for 60 Months until Paid in Full |

**ii.     CLASSES OF UNSECURED CLAIMS:**

**10.    CLAIMS OF GENERAL UNSECURED CREDITORS**

General unsecured claims are not secured by property of the estate and are not entitled to priority under Section 507(a) of the Bankruptcy Code.

The following chart identifies the Plan's proposed treatment of Class Number 3 claims which contains the general unsecured claims against the Debtor. The Class Treatment of this claim is divided into Sub parts to account for the potential contingencies surrounding claims in Class 2. Depending on the status of Class 2 claims and assets; the payments under Debtor's plan of reorganization to unsecured creditors may vary. As such Debtor lists disbursal to unsecured creditors based on the following scenarios: (1) if Class 2 assets are retained at Debtor's valuation; (2) if Class 2 assets as retained at the secured creditors valuation; and (3) if Class 2 assets are lost at foreclosure sale.

**a.     Potential Treatment #1; Retention of Class 2 Asset and Valuation Based on the Debtor's Appraisal**

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| 10(a). | General Unsecured Class, which include the unsecured portion of the Debtor's first and second lien holders | Impaired | Monthly Payment for the First 6 Months of the Plan= $283.79<br><br>Monthly Payment of $392.13 for remaining 54 Months[1] |

///
///

---

[1]The Monthly Payment fluctuates due to the fact that Debtor cannot motion to close the case until 180 days after confirmation. Until such time as Debtor is able to close the case, Debtor must account for U.S. Trustee Fees.

14

///
///
///

**b.      Potential Treatment #2; Retention of Class 2 Asset and Valuation Based on the Secured Creditor's Appraisal**

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| 10(b). | General Unsecured Class, which include the unsecured portion of the Debtor's first and second lien holders | Impaired | Monthly Payment for the First 6 Months of the Plan= $41.19<br><br>Monthly Payment of $149.53 for remaining 54 Months[2] |

**c.      Potential Treatment #3; Loss of Class 2 Asset**

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| 10(c). | General Unsecured Class, which include the unsecured portion of the Debtor's first and second lien holders | Impaired | Monthly Payment for the First 6 Months of the Plan= $0.00<br><br>Monthly Payment of $64.22 for remaining 54 Months[3] |

**11.      CLAIM OF CITY NATIONAL BANK AS TO DEBTOR'S INTEREST IN PENDING FEDERAL CASE 2:11-cv-01384-LDG-CWH AGARWAL ET AL. V. OREGON MUTUAL INSURANCE COMPANY**

Debtor is currently litigating a case in federal court concerning payout on an insurance policy stemming from the alleged vandalization of his property.  Under City National Bank's note and deed of trustee City National is listed as the loss payee on the subject property 529 Calcaterra Circle, Las Vegas, NV.  At the time of this filing, a Motion for Summary Judgment by Oregon Mutual Insurance Company had been filed in the case and is still pending.  If the case should turn out to bring property

_____

[2]The Monthly Payment fluctuates due to the fact that Debtor cannot motion to close the case until 180 days after confirmation.  Until such time as Debtor is able to close the case, Debtor must account for U.S. Trustee Fees.

[3]The Monthly Payment fluctuates due to the fact that Debtor cannot motion to close the case until 180 days after confirmation.  Until such time as Debtor is able to close the case, Debtor must account for U.S. Trustee Fees.

15

into the bankruptcy estate either via settlement and/ or judgment then treatment will be as follows:

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| 11 | Interest of City National Bank as to Debtor's Interest in Federal Case 2:11-cv-01384-LDG-CWH | Impaired | Debtor will deposit funds from the settlement into a control account and will be allowed to expense the account for any of his personal funds he may have used to rehabilitate 529 Calcaterra Circle. |

### iii.    EQUITY INTEREST OF THE DEBTOR:

Equity interest holders are parties who hold an ownership interest (i.e. equity interest) in a corporation, entities holding preferred or common stock are equity interest holders. In a partnership, equity interest holder are the members. Finally with respect to an individual who is a debtor, the Debtor is the equity interest holder.

In this case, because the Debtor is an individual therefore there are no equity interests that must be accounted for.

### iv.    UNCLASSIFIED CLAIMS

Under section 1123(a)(1), administrative expense claims, and priority tax claims are not in classes and are automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code.

### 1.    ADMINISTRATIVE EXPENSES:

Administrative expenses are costs or expenses of administering the Debtor's Chapter 11 case including U.S. Trustee fees which are allowed under section 507(a)(2) of the Bankruptcy Code. Administrative expenses also include all business operations costs in the ordinary course of business that accrued after the Debtor filed for bankruptcy. Administrative expenses include costs and attorneys' fees of employing professionals, including Callister & Associates, LLC, that accrue after the Debtor filed for bankruptcy. As required by the Bankruptcy Code, the Debtor will pay all administrative expenses on the effective date of the Plan, unless a particular claimant agrees to a different treatment. The following chart lists the Debtor's estimated administrative expenses and their proposed treatment under the Plan:

| TYPE | ESTIMATED AMOUNT OWED | PROPOSED TREATMENT |
|------|----------------------|--------------------|
| Expenses Arising in the Ordinary Course of Business after the petition Date | Current as of the date of filing of the Disclosure Statement. | Paid in full on the effective date of the Plan or according to terms of obligation if later. |

16

| Professional Fees, as approved by the court | Estimated to be $35,000.00 | Partially paid via a prepetition retainer of $7,200.00 <br><br> The remaining balance of $27,800.00 is to be paid through the Debtor's plan of reorganization. Estimated monthly payment of $463.34 for 60 months.[1] |
|---|---|---|
| Clerk's Office Fees | $0.00 | Paid in full on the effective date of the Plan. |
| Office of the U.S. Trustee Fees | $0.00 | Paid in full on the effective date of the Plan |
| **TOTAL** | Estimated to be $35,000 | |

## 2.    PRIORITY TAX CLAIMS:

Priority tax claims are unsecured income employment, and other taxes described by Section 507(a)(8) of the Bankruptcy Code. Unless the holder of such a Section 507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

This Debtor has the following priority tax claims:

| Creditor | Amount of Claim | Proposed Plan Treatment |
|---|---|---|
| Internal Revenue Service <br> P.O. Box 7346 <br> Philadelphia, PA 19101 | $3,513.60 | Paid in full over 60 months with a Plan Payment of $58.56 a Month |
| Internal Revenue Service <br> P.O. Box 7346 <br> Philadelphia, PA 19101 | $410.86 | Paid in Full Over 60 Months with a Monthly Plan Payment of $6.85 |
| Clark County Treasurer <br> 500 South Grand Central Pkwy <br> PO Box 551220 <br> Las Vegas, NV 89155 | $5,597.75 | Paid in Full over 60 Months with a Monthly Plan Payment of $93.30 |

---

[1]Debtor's attorney services are ongoing and it is expected that this number will increase over time based on approved Application for Compensation.

17

| Clark County Assessor<br>P.O. Box 551401<br>Las Vegas, NV 89155 | $67.82 | Paid in Full at the Outset of the Plan |
|---|---|---|

### v.    TREATMENT OF EXECUTORY CONTRACT/ UNEXPIRED LEASES:

The Debtor may assume or reject pre-petition executory contracts and/ or unexpired leases: If the Debtor assumes an executory contract and/ or unexpired lease, the contract or lease will remain binding from the effective date of the confirmed Plan moving forward. If the Debtor rejects any executory contract and/ or unexpired lease, the contract or lease is voided. The Debtor can, however, modify a lease if the other party-in-interest agrees to modification subject to Court approval. If the Debtor has pre-petition arrears for any unexpired lease or executory contract, those arrears will be treated as Class 3 General Unsecured Creditors. IF the Debtor owes money for post-petition use of objects or property burdened by the executory contract/ unexpired lease, the creditor can make a claim for such monies. WE SUGGEST THAT YOU CONSULT A QUALIFIED ATTORNEY IF YOU WISH TO LODGE A CLAIM FOR SUCH POST-PETITION DEBT.

The Debtor **assumes** all residential lease with tenants who rent the Debtor's residential investment properties.

For a list of the Debtor's Executory Contract and Unexpired Lease, please see **Exhibit E.** This exhibit also describes how the executory contracts and unexpired lease are to be treated. Consult your attorney for more specific information about particular contracts or leases.

If you object to the assumption of your unexpired or executory contract, the proposed cure of any defaults, or the adequacy of assurance of performance, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan, unless the Court sets an earlier time.

If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan. Any claim based on the rejection of a contract or lease will be barred if a proof of claim is not timely filed, unless the Court orders otherwise.

### B.    ALLOWANCE    OR    DISALLOWANCE    OF    CLAIMS/    CLAIMS OBJECTIONS:

Generally, a claim is allowed if either (A) the Debtor has scheduled the claim on her schedules, unless the claim has been scheduled as dispute, contingent, or un-liquidated, or (B) the creditor has filed a proof of claim, unless an objection has been filed to such proof of claim by the Debtor, in which case, such creditor cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure. Under 11USC §502(g), claims arising from the rejection or non-assumption of an executory contract or lease are allowed if the claim had arisen before the date of the filing of the petition.

### i.    PROOFS-OF-CLAIMS:

A creditor may file a proof-of-claim that sets out its claim against the Debtor. If you claim is listed in the Debtor's Schedules of Liabilities, and you agree with the claim amount listed there,

18

you not need to file a proof-of-claim in the case.  If the Debtor amends the Schedules of Liabilities and your claim is affected, you will have an opportunity to file an objection to any such change.

### ii.    CLAIMS OBJECTIONS

### 1.    FILING A CLAIMS OBJECTION:

Any party-in-interest may file a claim objection to certain claims set forth in the Plan, the Debtor's schedules, on in the proofs-of-claims.  These parties may file a claim objection.

- The Debtor
- The U.S. Trustee
- The Debtor's Post-Petition Secured Lender
- A Creditor of the Debtor.
- A Committee in this Chapter 11 Case.
- A Plan Proponent
- A Party having interest in assets included in the Estate.

**The deadline for filing a claims objection in this case is at any date prior to the date on which the Court enters the order approving this Disclosure Statement.**  The party-in-interest may file a claims objection in the manner described in the Bankruptcy Rules of Procedure Rule 3007.
**IF YOU WISH TO FILE A CLAIMS OBJECTION, WE ADVISE THAT YOU SEEK THE ADVICE OF A BANKRUPTCY ATTORNEY OR AT LEAST, READ OVER BANKRUPTCY RULE 3007, AND PROCEED ACCORDINGLY.**

### 2.    THE DEBTOR RETAINS HIS RIGHTS TO OBJECT TO CLAIMS:

The Debtor retains his right to object to claims, to object to proofs of claims, and otherwise contest any claim as the Code permits such objection.

### 3.    DISPUTED CLAIMS:

A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and ast to which either: (i)a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.
**Delay of Distribution on a Disputed Claim.**  No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order
**Settlement of Disputed Claims.** The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

### iii.    PROJECTED RECOVERY OF AVOIDABLE TRANSFERS:

The Debtor does not intend to pursue preference, fraudulent conveyance, or avoidance actions at this time.  The Debtor does not believe any significant transfers occurred during the two (2) year period leading up to the filing of this case.  Importantly, the majority of the Debtor's significant transfer were the payment of the mortgages.

The Debtor reserves his right, however to perform and complete an investigation with regard to pre-petition transactions. Although he does not believe significant transfer occurred, creditors should be aware that if you received a payment or other transfer within ninety (90) days of the bankruptcy, or other transfer avoidable under the Bankruptcy Code, the Debtor may seek to avoid such transfer.

### V.   CONFIRMATION OF THE PLAN.

In order for a Plan to be effective and binding on the Debtor and his creditors, certain creditors must vote to approve or reject the Plan, and the Court must approve of the Plan after notice and a hearing.

### A.   CONFIRMATION REQUIREMENTS

To be confirmable, the Plan must meet the requirements listed in Section 1129(a) or (b) of the Bankruptcy Code. These include requirement that: (1) the Plan must be proposed in good faith; (2) the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a Chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan;(3) the Plan must be feasible; (4) at least one impaired class of claims must accept the plan, without counting votes of insiders. These requirement are not the only requirements listed in Section 1129, and they are not the only requirements for confirmation.

### B.  REQUIREMENT FOR CONFIRMATION-THE DEBTOR HAS PROPOSED HIS PLAN IN GOOD-FAITH

The Debtor has proposed his Plan in good faith. Debtor's substantial mortgage payments have resulted in Debtor's inability to cover his expenses through incoming rental payment and personal income. Furthermore this set of circumstances has resulted in substantial arrears on the Debtor's primary residence. This Plan lowers the Debtor's debt obligation on the investment properties and cures any arrears on his primary residence. In his Plan the Debtor, to the best of his knowledge, has presented the facts honestly and completely. There is no evidence that the Debtor has abused the Bankruptcy laws in any way.

### C.   THE "BEST INTERESTS OF THE CREDITORS" REQUIREMENT FOR CONFIRMATION- EACH CREDITOR WILL RECEIVE EQUAL OR GREATER COMPENSATION UNDER THE PROPOSED CHAPTER 11 PLAN THAN ITS COMPENSATION UNDER A HYPOTHETICAL CHAPTER 7 LIQUIDATION:

To confirm the Plan, the Court must find that the Chapter 11 Plan is "in the best interest of the creditors." That is all creditors and equity interest holder who do not accept the Plan must receive at least as much under the Plan as such claim and equity interest holders would receive in a Chapter 7 Liquidation. **Exhibit C-The Debtor's Liquidation Analysis** shows that Creditors will receive as equal or greater compensation under the Debtor's proposed Chapter 11 Plan than under a hypothetical Chapter 7 liquidation. The Debtor's Plan is "in the best interest of the creditors," and it should be confirmed.

**See Exhibit C-The Debtor's Liquidation Analysis** for a detailed discussion regarding the "Best Interest of the Creditors" and the Liquidation analysis as it applies to each class of claims.

### D.    THE PROPOSED PLAN IS FEASIBLE

Pursuant to 11 USC 1129(a)(11), the Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or need for further financial reorganization of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan. **EXHIBIT E-THE DEBTOR'S FEASIBILITY ANALYSIS** shows that the Debtor will meet his debt obligations under the Plan and that further reorganization or liquidation will not occur. Thus, the Plan is "in the best interest of the creditors" and it should be confirmed.

**SEE EXHIBIT E-DEBTORS' FEASIBILITY ANALYSIS** for a detailed discussion regarding the feasibility of the Plan.

### E.    CONFIRMATION VOTING REQUIREMENTS AND PROCEDURES:

#### i.    PARTIES WHO MAY VOTE TO ACCEPT OR REJECT THE PLAN AND WHO MAY OBJECT TO CONFIRMATION OF THE PLAN

Any party-in-interest may object to the confirmation of the Plan if the Party believes that the requirements for confirmation are not met.

Many parties-in-interest, however, are not entitled to vote or accept or reject the Plan. A creditor or equity interest holder has a right to vote for or against the Plan only that creditor or equity interest holder has a claim or equity interest that is both (1) allowed(or allowed for voting purposes) and (2) impaired. As provided in Section 1124 of the Bankruptcy Code, a class is considered impaired if the Plan alters legal, equitable, or contractual rights of the members of that class.

In his case, the Debtor believes that Classes 1, 2, and 3 are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan.

#### ii.    PARTIES ENTITLED TO VOTE

The following types of claim-holders are not entitled to vote:

- Holders of claims that have been disallowed by an order of the court;
- Holders of other claims that are not "allowed claims" (as discussed above) unless they have been "allowed" for voting purposes;
- Holders of claim in unimpaired classes
- Holder of claims entitled to priority pursuant to Sections 507(a)(2) or (a)(8) of the bankruptcy Code;
- Holders of claims in classes that do not receive or retain any value under the plan; and
- Administrative Expenses

Even if you are not entitled to vote on the Plan, you have the right to object to the confirmation of the Plan and to the adequacy of the Disclosure Statement.

#### iii.    PARTIES WHO CAN VOTE IN MORE THAN ONE CLASS

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a

Plan in each capacity and should cast one ballot for each claim.

### iv.    VOTES NECESSARY TO CONFIRM THE PLAN:

If an impaired class exists, the Court cannot confirm the Plan unless (A) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class or (B) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting class as discussed below.

### 1.    VOTES NECESSARY FOR A CLASS TO ACCEPT THE PLAN:

A class of claims accepts the Plan if both the following occur: (A) the holders of more than one-half (½) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (B) the holders of at least two thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

### 2.    TREATMENT OF NON-ACCEPTING CLASSES-"CRAM-DOWN"

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the non-accepting classes are treated in the manner prescribed by §1129(b) of the Code. A plan that binds non-accepting classes is commonly referred to as a "cram-down" plan. The Code allows the Plan to bind non-accepting classes of claims or equity interest if ti meets all the requirements for consensual confirmation except the voting requirements of §1129(b) (8) of the Code, does not discriminate unfairly, and is fair and equitable toward each impaired class that has not voted to accept the Plan. **YOU SHOULD CONSULT AN ATTORNEY IF A "CRAMDOWN" CONFIRMATION WILL AFFECT YOUR CLAIM OR EQUITY INTEREST, AS THE VARIATIONS ON THIS GENERAL RULE ARE NUMEROUS AND COMPLEX.**

### VI.    MEANS OF IMPLEMENTING THE PLAN

### A. SOURCE OF PAYMENTS:

Payments and distribution under the Plan will be funded by the Debtor, based upon their (a) projected monthly rental income, and (b) personal income from part-time employment and/ or temporary unemployment. The Debtor's Cash Flow Analysis is attached hereto as **Exhibit D** and outlines the Debtor's sources and used of income. The Plan payments described in this Disclosure Statement are based on the sum of the Debtor's rental and personal income, minus her monthly mortgage payments, monthly reserves, and expenses for the property and personal expenses. The difference between the two amounts is the Debtor's proposed monthly Plan payment of **$368.67**

### B.    METHOD OF PLAN PAYMENTS:

Debtor will pay all distributions into a separate account on a monthly basis. Debtor will make dispersals from this account quarterly to all unsecured claimants, administrative claimants, and tax claimants. Upon time of dispersal, Debtor will mail payment of the claimants share of Monthly Disposable Income as well as an accounting of the current occupancy at Debtor's properties at 537 and 529 Calcaterra Circle during the quarter for which the dispersals are made.

Debtor will make payments on secured Debts directly to the appropriate claim holder.

### C. DISTRIBUTION ON ACCOUNT OF CLAIMS ALLOWED AFTER THE EFFECTIVE DATE

Except as otherwise provided in the Plan, or upon the entry of a final, non-appealable order of the Bankruptcy Court, or as agreed to by the relevant parties, distributions under the Plan on account of a disputed claim that becomes an allowed claim after the effective date of the Plan shall begin on the regular monthly payment date, as established by the Disbursement Agent, which is at least thirty (30) days after such claim becomes an allowed claim.

Notwithstanding anything in the Plan to the contrary, and except as otherwise agreed to by the relevant parties, no partial payments and no partial distributions shall be made with respect to a disputed claim until all such disputes in connection with such disputed claim have been resolved by settlement among the parties or a final order of the Court. In the event that there are disputed claims requiring adjudication and resolution, Debtor shall establish appropriate reserves for potential payment of such Claims pursuant to the Plan.

### D. POST-CONFIRMATION MANAGEMENT

The Debtor will manage his properties post-petition in the ordinary course. He will be authorized to enter into, terminate, and renew lease agreements as he sees fit. Such activities will include retaining management companies to aid in the renting of their property, drafting and serving eviction notices, negotiating loan modifications or refinancing their properties, repairing the properties and maintaining a reserve account of up to three month's mortgage payments, taxes, insurance and repair reserves, or $10,000.00, whichever is greater.

### E. RISK FACTORS

The significant risk related to the Debtor's Plan include the deterioration of the housing and/or rental market. If the rental market deteriorates and the Debtor's is unable to generate enough revenue via his monthly rental payments from tenants, the Debtor may become unable to make his Plan payments

Additionally if Arvind Agarwal cannot secure employment before his unemployment compensation runs out this will additionally effect the plan and possibly necessitate family contributions to the plan.

### F. TAX CONSEQUENCES

**Creditors concerned with how the plan may affect their tax liability should consult with their own Accountants, Attorneys, and/or Advisors.**

The Debtor does not anticipate any adverse tax consequences to his estate from the Plan. To the extent the Debtor receives any debt forgiveness income related to this Chapter 11 case, such income would not be taxable under Section 108(a)(1) of the Internal Revenue Code, 26 U.S.C. §§1, *et seq*

## VII.   EFFECT OF CONFIRMATION OF THE PLAN

### A.   Discharge of the Debtor

Confirmation of the Plan does not discharge any debt provided for in the Plan until the Court grants a discharge on completion of all payments under the Plan, or as otherwise provided in Section 1141(d)(5) of the Bankruptcy Code.  The Debtor will not be discharged from any debt excepted from discharge under Section 523 of the Bankruptcy Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

### B.   Modification of the Plan

The Debtor may modify the Plan at any time before confirmation of the Plan.  The Court however may require a new Disclosure Statement and/ or re-voting on the Plan.

The Debtor may also seek to modify the Plan at any time after confirmation only if (A) the Plan has not been substantially consummated and (B) the Court authorizes the proposed modification after notice and a hearing.

Upon request of any interested party, the Plan may be modified at any time after the confirmation of the Plan, but before the completion of payments under the Plan to (1) increase or reduce the amount of payments under the Plan on claims of a particular class, (2) extend or reduce the time period for such payments, or (3) alter the amount of distribution to a creditor whose claim is provided for by the Plan to the extent necessary to take on accounting of any payment of a claim made other than under the Plan.

Effective as of the date hereof and subject to the limitations and rights contained in the Plan: (a) the Debtor reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan prior to the entry of the confirmation order; and (b) after the entry of the confirmation order, the Debtor or the reorganized Debtor, as applicable, may upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan; provided however that any modification to the Plan shall not affect the rights or treatment of holders of General Unsecured Claims.

### C.   Final Decree

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Debtor, or such other party as the Court shall designate in the Plan confirmation order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such a final decree on its own motion.

## VIII.   OTHER PLAN PROVISIONS

### A.   Vesting of Assets in the Reorganized Debtor

After the confirmation of the Plan, all property of the Debtor's shall vest in the reorganized

24

Debtor, free and clear of all liens, claims, charges, or other encumbrances, except those enumerated in the order approving the Motions to Value and the confirmation order.  The reorganized Debtor may operate his business and may use , acquire, or dispose of property and compromise or settle any claims without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the Confirmation Order.  Without limiting the foregoing, the Debtor shall pay the charges that he incurs after confirmation for professional fees, disbursements, expenses or related support services (including reasonable fees relating to the preparation of professional fee applications) without application to the Bankruptcy Court.

### B.    Release of Liens, Claims, and Equity Interests

Except as otherwise provided herein or in any contract, instrument, release, or other agreement or documented entered into or delivered in connection with the Plan, upon confirmation all liens, claims, mortgages, deeds of trust, or other security interest against the property of the Debtor's estate shall be fully released and discharged.  The security interests of the Debtor first lien holders however shall be unimpaired under the Plan with respect to both the Debtor and his property taking into consideration the Motions to Value on the Debtor's property.

### C.    Effectuating Document; Further Transactions; Exemption from Certain Transfer Taxes

The Debtor may take all actions to execute, deliver, file or record such contracts, instruments, releases, and other agreements or documents and take such action as may be necessary or appropriate to effectuate and implement the provision of the Plan.

Pursuant to section 1146(a) of the Bankruptcy code, any transfer of property pursuant to the Plan shall not subject to any stamp tax or other similar tax or governmental assessment in the United States and the confirmation order shall direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other document pursuant to such transfers of property without the payment of any such tax or governmental assessment.

### D.    Revocation of the Plan

The Debtor reserves the right to revoke or withdraw the Plan prior to the confirmation hearing and to file subsequent Chapter 11 plans.  If the Debtor revokes or withdraws the Plan or if confirmation does not occur, the (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contract or Unexpired Leases effected by the Plan and any document or agreement executed pursuant hereto shall be deemed null and void except as may be set forth in a separate order entered by the Court; and (3) nothing contained in the Plan shall:(a) constitute a waiver or release of any Claims by or against the Debtor or any other entity; (b) prejudice in any manner the rights of the Debtor or any other entity; or (c)constitute an admission, acknowledgment, offer or undertaking of any sort by the Debtor or any other entity.

### E.    Successor and Assigns

The rights, benefits, and obligations of any entity named or referred to herein shall be binding on and shall inure to the benefit of any heir, executor, administrator, successor or assign of such entity.

### F.      Reservation of rights

Except as expressly set forth herein, the Plan shall have no force or effect until the Court enters the confirmation order.  Neither the filing of the Plan, any statement or provision contained in the Disclosure Statement, nor the taking of any action by the Debtor or any other entity with respect to the Plan shall be or shall be deemed to be an admission ro waiver of rights of (1) any Debtor with respect to the holders of claims or other entity; or (2) any holder of a Claim or other entity prior to the effective date of the Plan.

### G.      Further Assurances

The Debtor or the reorganized Debtor, as applicable, all holders of Claims receiving distribution under the Plan and all other entities shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provision and intent of the Plan or the confirmation order

### H.      Severability

If prior to confirmation of the Plan any term or provision of the Plan is held by the Court to be invalid, void, or unenforceable, the Court shall have the power to alter and interpret such term or provision to make it valid and enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable and such term or provision then will be applicable as alter or interpreted, *provided* that any such alteration or interpretation must be in form and substance reasonably acceptable to the Debtor, and to the extent such alteration or interpretation affects the rights or treatment of holders of general unsecured claims, such claim holder

### I.      Return of Security Deposits

Unless the Debtor agrees otherwise in a written agreement or stipulation approved by the Court, all security deposits provided by the Debtor to any person or entity at any time after the petition date shall be returned to the Debtor within twenty (20) days after the date of confirmation, without deduction or offset of any kind.

///
///
///
///
///
///
///
///
///

///

**J.      Filing of Additional Documents**

On or before the Effective Date, the Debtors may file with the Court all agreements and other document that may be necessary or appropriate to effectuate and further evidence the terms and condition hereof.


 /s/Arvind Agarwal
Arvind Agarwal


/s/ Alka Agarwal
Alka Agarwal


 /s/Thomas N. Beckom, Esq
THOMAS N. BECKOM, ESQ
Attorney for the Debtor and the Debtor in Possession

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

1

2

**MATTHEW Q. CALLISTER, ESQ**                                    **E-FILED:**

3     Nevada Bar No. 001396
mqc@call-law.com

4     **THOMAS N. BECKOM, ESQ**
Nevada Bar No. 12554

5     beckomt@call-law.com
CALLISTER & ASSOCIATES, LLC

6     823 Las Vegas Blvd., South, Suite 500

7     Las Vegas, NV 89101
Telephone: (702) 385-3343

8     Facsimile: (702) 385-2899
E-Mail: mqc@call-law.com

9     Attorney for Debtor, *Arvind and Alka Agarwal*

10

11                    **UNITED STATES BANKRUPTCY COURT**
                            **DISTRICT OF NEVADA**

12

| | |
|---|---|
| In re:<br><br>ARVIND AGARWAL and ALKA AGARWAL,<br><br>Debtors. | Case No.  11-17763-lbr<br>Chapter 11<br><br>Hearing date: September 26, 2012<br>Time:            2:00pm |

13

14

15

16

17

18     <u>**SECOND AMENDED PLAN OF REORGANIZATION OF ARVIND AND ALKA**</u>
                                     <u>**AGARWAL**</u>

19

20                              **ARTICLE I-SUMMARY**

21         This Plan of Reorganization (the "Plan") under Chapter 11 of the Untied states Bankruptcy
Code, 11 USC §§101 *et seq* (the **"Bankruptcy Code")** proposes to pay creditors of **ARVIND and**

22     **ALKA AGARWAL,** the above-captioned debtors and debtors-in-possession (the "**Debtors**") from
the reorganization of his residential property and secured debt.

23

24         This Plan provides for 4 classes of secured claims; and 1 class of unsecured claims.
Unsecured creditors holding allowed claims will receive distributions, which the Debtor has valued

25     at approximately **$368.67** per month of each creditor's allowed claim to be distributed in their
respective shares.  This Plan also provides for the payment of administrative and priority claims in

26     full on the effective date of this Plan, or as agreed by the holder of such administrative or priority
claim.

27

28         All creditors should refer to Article II through IV of this Plan for information regarding the
precise treatment of their claims.  A Disclosure Statement (the "**Disclosure Statement**") that
provides more detailed information regarding this Plan and the rights of creditors was circulated

with this Plan.  You rights may be affected.  You should read these papers carefully and discuss them with you attorney.  If you do not have an attorney, you may wish to consult one.

## ARTICLE II-CLASSIFICATION AND TREATMENT OF CLAIMS

This Plan constitutes the Chapter 11 plan of reorganization of the Debtor.  All Claims against the Debtor are placed in classes (each a "Class")

**A.    Classification of Claims**

2.01    Class 1-Secured Claim of CITY NATIONAL BANK

(a)    Classification:   Class 1 consists of the Secured Claims of City National Bank against the Debtor's property located at 529 Calcaterra Circle, Las Vegas, NV 89119, which is secured by a lien against the Debtor's residential rental property, loan number xxxxxx-0019

(b)    *Treatment*:  The holder of an allowed Class 1 secured Claim shall be impaired and paid on a new principal loan amount of $95,000.00 with a fixed interest rate of 5.00% for thirty years, amortized over thirty years, and monthly payments of $787.80 with taxes and insurance impounded by the lender and included in this estimated payment.

(c)    *Valuation:*   Class 1 claims are valued at $95,000.00

(d)    *Unsecured Portion of the Claim:*   Any amount of a Class 1(a) claim that is deemed to be unsecured in accordance with section 1(c) shall be afforded treatment set forth in Class 10 below.

(e)    *Voting:*   Class 1  is an impaired class, and the holder of the Class 1(a) claim is entitled to vote to accept or reject the Plan

2.02    Class 2-Secured Claim of U.S. BANK

(a)    Classification:   Class 2 consists of the Secured Claim of U.S. Bank against the Debtor's investment property located at 537 Calcaterra Circle, Las Vegas, NV 89119, which is secured by a lien against the Debtor's residential rental property, loan number xxxxxx-6418

(b)    *Treatment*:  The holder of an allowed Class 2 secured Claim shall be impaired and Debtor will pay the principal balance of $95,000.00  at a new interest rate of 5.00%.  Debtor will make monthly payments in the amount of $797.69 amortized over 30 years with taxes and insurance impounded by the lender and included in this estimated payment.

(c)    *Valuation:*   The Class 2 Secured Claim shall be valued at $95,000.00.

(d)    *Unsecured Portion of the Claim:   :*   Any amount of a Class 2 claim that is deemed to be unsecured in accordance with section 1(c) shall be afforded treatment set forth in Class 10

below.

(e)    *Voting:*  Class 2 is an impaired class, and the holder of the Class 2 claim is entitled to vote to accept or reject the Plan

      2.03    Class 3-Secured Claim of BANK OF AMERICA, SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING

(a)    Classification:    Class 3 consists of the Secured Claim U.S. Bank National Association against the Debtor's investment property located at 3370 South Pecos Rd, Las Vegas,  NV 89, which is secured by a lien against the Debtor's residential rental property.

(b)    *Treatment*:  The holder of an allowed Class 3 secured Claim shall be impaired and Debtor will pay the principal balance of $94,000.00  at a new interest rate of 5.00%.  Debtor will make monthly payments in the amount of $623.66 amortized over 30 years with taxes and insurance impounded by the lender and included in this estimated payment.

(c)    *Valuation:*  Class 3 shall be valued at $94,000.00

(d)    *Unsecured Portion of the Claim:  :*  Any amount of a Class 3 claim that is deemed to be unsecured in accordance with section 3(c) shall be afforded treatment set forth in Class 10 below.

(e)    *Voting:*  Class 3 is an impaired class, and the holder of the Class 3 claim is entitled to vote to accept or reject the Plan

      2.04    Class 4-Secured Claim of BAC HOME LOANS SERVICING, L.P.

(a)    Classification:  Class 4 consists of the Secured Claim of BAC HOME LOANS SERVICING against the Debtor's investment property located at 1852 Arbol Verde Way, Las Vegas, NV 89119, which is secured by a lien against the Debtor's residential rental property.

(b)    *Treatment*:  The holder of an allowed Class 4 secured Claim shall be impaired and Debtor will pay the principal balance of $44,000.00  at a new interest rate of 5.00%.  Debtor will make monthly payments in the amount of $335.90 amortized over 30 years with taxes and insurance impounded by the lender and included in this estimated payment.

(c)    *Valuation:*  Class 4 shall be valued at $44,000.00

(d)    *Unsecured Portion of the Claim:  :*  Any amount of a Class 4 claim that is deemed to be unsecured in accordance with section 1(d) shall be afforded treatment set forth in Class 5 below.

(e)    *Voting:*  Class 4 is an impaired class, and the holder of the Class 4 claim is entitled to vote to accept or reject the Plan

      2.05    Class 5-Secured Claim of BANK OF AMERICA, N.A.

(a)    Classification:  Class 5 consists of the Secured Claim of BANK OF AMERICA N.A. against the Debtor's investment property located at 393 Greenleaf Drive, Las Vegas, NV 89121, which is secured by a lien against the Debtor's residential rental property.

(b)    *Treatment*:  The holder of an allowed Class 5 secured Claim shall be impaired and Debtor will pay the principal balance of $100,000.00  at a new interest rate of 5.00%.  Debtor will make monthly payments in the amount of $677.70 amortized over 30 years with taxes and insurance impounded by the lender and included in this estimated payment.

(c)    *Valuation:*  Class 5 shall be valued at $100,000.00

(d)    *Unsecured Portion of the Claim:  :*  Any amount of a Class 1(e) claim that is deemed to be unsecured in accordance with section 1(e) shall be afforded treatment set forth in Class 5 below.

(e)    *Voting:*  Class 5  is an impaired class, and the holder of the Class 5 claim is entitled to vote to accept or reject the Plan

2.06    Class 6-Secured Claim of AURORA LOAN SERVICES, LLC

(a)    Classification:   Class 6 consists of the Secured Claim of AURORA LOAN SERVICES against the Debtor's property located at 1582 Galea Dr., San Jose 95121 , which is secured by a lien against the Debtor's residential property.

(b)    *Treatment*:  The holder of an allowed Class 6 secured Claim shall be unimpaired and Debtor will pay the principal balance of $205,548.19 at a new interest rate of 5.00%.  Debtor will make monthly payments in the amount of $2,156.84 amortized over 30 years with taxes and insurance impounded by the lender and included in this estimated payment.

(c)    *Valuation:*  Class 6 shall be valued at $205,548.19

(d)    *Unsecured Portion of the Claim:  :*  Class 6 claims are deemed fully secured.

(e)    *Voting:*  Class 6 is an unimpaired class, and the holder of the Class 6 claim is not entitled to vote to accept or reject the Plan

2.07    Class 7-Secured Claim of BANK OF THE WEST

(a)    Classification:  Class 7 consists of the Secured Claim of BANK OF THE WEST against the Debtor's property located at 1582 Galea Dr., San Jose 95121 , which is secured by a lien against the Debtor's residential property.

(b)    *Treatment*:  The holder of an allowed Class 7 secured Claim shall be impaired and will be bifurcated into a secured claim of $116,451.81 and an unsecured claim of $75,158.40 which will receive treatment in Class 10.

(c)    *Valuation:*  Class 7 shall be valued at $116,451.81

(d)  *Unsecured Portion of the Claim:  :*   Any amount of a Class 7 claim that is deemed to be unsecured in accordance with section 3 shall be afforded treatment set forth in Class 5 below.

(e)  *Voting:*   Class 7 is an impaired class, and the holder of the Class 7 claim is entitled to vote to accept or reject the Plan

2.08    Class 8-Secured Claim of REPUBLIC SERVICES

(a)  Classification:   Class 8 consists of the Secured Claim of REPUBLIC SERVICES.

(b)  *Treatment*:   The holder of an allowed Class 8 secured Claim shall be impaired and but will be paid in full at a payment amount of $5.28 a month for 60 months.

(c)  *Valuation:*   Class 8 shall be valued at $316.78

(d)  *Unsecured Portion of the Claim:  :*   Any amount of a Class 8 claim that is deemed to be unsecured in accordance with section 3 shall be afforded treatment set forth in Class 5 below.

(e)  *Voting:*   Class 8 is an impaired class, and the holder of the Class 8 claim is entitled to vote to accept or reject the Plan

2.08    Class 9-Secured Claim of GREENTREE HOMEOWNERS ASSOCIATION

(a)  Classification:   Class 9 consists of the Secured Claim of GREENTREE HOMEOWNERS ASSOCIATION against the Debtor's property located at 1852 Arbol Verde, Las Vegas, NV, which is secured by a statutory lien against the Debtor's residential property.

(b)  *Treatment*:   The holder of an allowed Class 9 secured Claim shall be impaired and be paid over 5 years in full, with a monthly payment of $237.55 for 60 months.

(c)  *Valuation:*   Class 9 shall be valued at $14,252.52

(d)  *Unsecured Portion of the Claim:  :*   No amount of Class 9 will be deemed unsecured.

(e)  *Voting:*   Class 9 is an impaired class, and the holder of the Class 9 claim is entitled to vote to accept or reject the Plan

2.10    Class 10-General Unsecured Claims of the Debtors and Wholly Unsecured First & Second Lien Holder and General Unsecured Creditors

(a)  *Classification:*   Class 10 consists of general unsecured claims of the Debtors and the Wholly Unsecured Claims of the Debtors First & Second Liens Holders.

(b)  *Treatment:*    Holder of allowed General Unsecured Claims of the Debtors and Wholly Unsecured First & Second Lenders shall receive, in full and final satisfaction of such allowed Class 10 claims, their pro rata share of the Debtors monthly plan payments, which the Debtors estimates to be $327.49 for 6 months and $435.83 for 54 months.

33

(c)  *Voting:*  Class 10  is impaired and holders of Class 10 claims are entitled to vote to accept or reject the plan.

2.11  Class 11-The Claim of City National Bank as to Debtor's Interest in the Pending Federal Case 2:11-cv-01384-LDG-CWH Agarwal et al. V. Oregon Mutual Insurance Company

(a)  *Classification:*  Class 11 consists of the unsecured claim of City National Bank against any settlement and/ or judgment reached in the Pending Federal Case 2:11-cv-01384-LDG-CWH Agarwal et al. V. Oregon Mutual Insurance Company

(b)  *Treatment:*  Debtor will placed any funds received from this case into a control account and Debtor will be allowed to expense the account for any out of pocket expenses he has accrued during the course of the rehabilitation of 529 Calcaterra Circle, Las Vegas, NV.

(c)  *Voting:*  Class 11  is impaired and holders of Class 11 claims are entitled to vote to accept or reject the plan.

## ARTICLE III

## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, U.S. TRUSTEES FEES AND PRIORITY TAX CLAIMS

3.01  Unclassified Claims.  In accordance with section 1123(a)(1) of the Bankruptcy Code, administrative expense claims, and priority tax claims are not in classes.

3.02  Administrative Expense Claims.        Each holder of an administrative expense claim allowed under Section 503 of the Bankruptcy Code will be paid through a combination of a prepetition retainer and through the Debtor's plan of reorganization.  The Debtor's only administrative claim to date is the claim of the Debtor's attorney, Callister & Associates. The Debtor currently estimates that approximately $35,000.00 in administrative expenses have either accrued and/ or will accrue through the course of the litigation of this bankruptcy . As such Debtor estimates that Debtor will pay $463.34 per month for 60 months towards these administrative expenses.

3.03  Priority Tax Claims.   Each holder of a priority tax claim will be paid in full over 60 months with plan payments as follows:

| Creditor | Amount of Claim | Proposed Plan Treatment |
| --- | --- | --- |
| Internal Revenue Service P.O. Box 7346 Philadelphia, PA 19101 | $3,513.60 | Paid in full over 60 months with a Plan Payment of $58.56 a Month |
| Internal Revenue Service P.O. Box 7346 Philadelphia, PA 19101 | $410.86 | Paid in Full Over 60 Months with a Monthly Plan Payment of $6.85 |

| Clark County Treasurer 500 South Grand Central Pky PO Box 551220 Las Vegas, NV 89155 | $5,597.75 | Paid in Full over 60 Months with a Monthly Plan Payment of $93.30 |
|---|---|---|
| Clark County Assessor P.O. Box 551401 Las Vegas, NV 89155 | $67.82 | Paid in Full at the Outset of the Plan |

3.04 <u>United States Trustee Fees.</u> All fees required to be paid by 28 USC §1930 will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code. Any U.S. Trustee Fees owed on or before the effective date of this Plan will be paid on the effective date. Debtor will maintain a reserve for the first 180 days post-confirmation to pay for Trustee Fees until the case is closed. Estimated reserve payments are $108.34 for 6 months until the case is closed.

**ARTICLE IV**
**PROVISIONS FOR EXECUTORY CONTRACT AND UNEXPIRED LEASES**

4.01 <u>Assumed Executory Contracts and Unexpired Leases.</u>

(a) The Debtor shall assume, on the effective date of this Plan, the executory contract and unexpired leases listed on **Exhibit F** attached hereto. Listed on **Exhibit F** is also the Debtor's estimated cure amount, if any, necessary to assume such contract in accordance with section 365 of the Bankruptcy Code.

(b) The Debtor will be conclusively deemed to have rejected all executory contracts and/ or unexpired lease not expressly assumed under section 4.01(a). A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than thirty (30) days after the date of the order confirming this Plan.

(c) The confirmation order shall constitute an order of the Bankruptcy Court approving such assumptions pursuant to sections 365 and 1123 of the Bankruptcy Code as of the effective date of this Plan. The Debtor reserves the right to amend **Exhibit F** at any time before the effective date.

(d) Any objection by a party to an executory contract or unexpired lease to the Debtor's proposed assumption or any related cure amount set forth on **Exhibit F** must be filed, served, and actually received by the Debtor at least five (5) days prior to the confirmation hearing of this Plan. Any party to an executory contract or unexpired lease that fails to object timely to the proposed cure amount will be deemed to have consented to such assignment of its executory contract or unexpired lease. The confirmation order shall constitute an order of the Bankruptcy Court approving any proposed assignments of executory contracts or unexpired lease pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.

(e) In the even of a dispute regarding (I) the amount of any cure payment, (ii) the ability of the Debtors to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under executory contract or unexpired lease to be assigned or (iii) any other

35

matter pertaining to assignment, the applicable cure payment required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a final order or orders resolving the dispute and approving the assumption.  If an objection to a cure amount is sustained by the Bankruptcy Court, the Debtor at his sole option may elect to reject such executory contract or unexpired lease in lieu of assuming and assigning it.

### ARTICLE V -MEANS FOR IMPLEMENTATION OF THE PLAN

5.01    <u>Source of Payment.</u> Payments and distribution under the Plan will be funded by the Debtor, based upon his (a) projected monthly income and (b) projected rental income from his business.  The Liquidation Analysis attached in the Disclosure Statement as **Exhibit C,** outlines the Debtor's sources and uses of income.  The Debtor's monthly Plan payment shall be **$1,300.67**

5.02    <u>Method of Plan Payments</u>

(a)    Debtor will personally issue payment to all creditors on the contractual due date being the following month after Plan Confirmation.

(b)    Except as otherwise provided in the Plan, or upon the entry of a final, non-appealable order of the Bankruptcy Court, or as agreed to by relevant parties, distributions under the Plan on account of a disputed claim that becomes an allowed claim after the effective date of the Plan shall begin on the regular monthly payment date.

(c)    Notwithstanding anything in the Plan to the contrary, and except as otherwise agreed to by the relevant parties, no partial payments and no partial distribution shall be made with respect to a disputed claim until all such disputes in connection with such disputed claim have been resolved by settlement among the parties or a final order of the Bankruptcy Court.

5.03 <u>Ownership of the Properties</u>.

All properties will remain in the name of the Debtor.

5.04    <u>Post-confirmation Management</u>

_____The Debtor will manage his properties post-petition in the ordinary course.  He will be authorized to enter into, terminate renew lease agreements as she sees fit.  Such activities will include retaining management companies to aid in the renting of his property, drafting and serving eviction notices, negotiating loan modifications or refinancing his properties, repairing the properties and maintaining a reserve account of up to one month's mortgage payments, or $10,000; whichever is greater.

### ARTICLE VI
### GENERAL PROVISIONS

6.01    <u>Definition and Rules of Construction</u>

The definitions and rules of construction set forth in Sections 101 and 102 of the Bankruptcy

Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan.

6.02    Effective Date of the Plan

        The effective date of this Plan is the eleventh business day following the date of entry of the confirmation order. But if a stay of the confirmation order is in effect on that date, the effective date will be the first business day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

6.03    Modification of the Plan

        The Debtor may modify the Plan at any time before confirmation of the Plan. The Court however may require a New Disclosure Statement and/ or re-voting on the Plan. The Debtor may also seek to modify the Plan at any time after confirmation only if (A) the Plan has been substantially consummated and (B) the Court authorizes the proposed modification after notice and a hearing.

        Upon request of any Party, the Plan may be modified at any time after confirmation of the Plan, but before the completion of payments under the Plan to (1) increase or reduce the amount of payments under the Plan on claims of a particular class, (2) extend or reduce the time period for such payments, or (3) alter the amount of distribution to a creditor whose claim is provided for by the Plan to extent necessary to take on accounting of any payment of a claim made other than under the Plan.

        Effective as of the date hereof and subject to the limitations and rights contained in the Plan: (a) the Debtor reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan prior to the entry of the confirmation order; and (b) after the entry of the confirmation order, the Debtor may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code or remedy any defect or omission ro reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

6.04    Final Decree

        Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Debtor, or such other party as the Court shall designate in the Plan confirmation order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such a final decree on its own motion.

6.05    Vesting of Assets in the Reorganized Debtors and the Holding Company

        After confirmation of the Plan, all property of the Debtor shall vest in the reorganized Debtor and the Holding Company, free and clear of all liens, claims, charges or other encumbrances, except those enumerated in the order approving the Motion to Value, Joint Stipulation, and the confirmation order. The reorganized Debtor may operate his business and may use, acquire, or dispose of property and compromise or settle any claims without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the Confirmation Order. Without limiting the foregoing, the Debtor shall pay charges that he incurs after confirmation for professionals' fees, disbursements, expenses or related support services (including reasonable fees relating to the preparation of

37

professional fee applications) without application to the Bankruptcy Court.

6.06    Release of Liens, Claims and Equity Interests

        Except as otherwise provided herein or in any contract, instrument, release or other agreement or document enter into or delivered in connection with the Plan, when all plan payment have been made, all junior liens, claims, mortgages, deeds of trust, or other security interests against the property of the Debtor's estate shall be fully release and discharged.  The security interests of the Debtor's first lien holders however, shall be unimpaired under the Plan with respect to both the Debtor and his property.

6.07    Certificate of Incorporation and Bylaws

        The articles of organization and bylaws (or other formation documents) of any holding company shall be amended as may be required to be consistent with the provisions of the Plan and the Bankruptcy Code or as otherwise required by, and in a form reasonably acceptable to the Debtor.

6.08    Effectuating Documents; Further Transactions

        The Debtor may take all actions to execute, deliver, file or record such cotracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provision of the Plan.

6.09    Exemption from Certain Transfer Taxes

        Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of proeprty pursuant to the Plan shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the confirmation order shall direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.

6.10    Revocation of the Plan

        The Debtor reserves the rights to revoke or withdraw the Plan prior to the confirmation hearing and to file subsequent Chapter 11 plans.  If the Debtor revokes or withdraws the Plan, or if confirmation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts or Unexpired Lease effected by the Plan and any document or agreement execute pursuant hereto shall be deemed null and void except as may be set forth a separate order entered by the Court; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims by or against the Debtor or any other entity; (b) prejudice in any manner the rights of the Debtor or any other entity; or (c) constitute an admission, acknowledgment, offer or undertaking of any sort by the Debtor or any other entity.

6.11    Successors and Assigns

        The rights, benefits and obligations of any entity named or referred to herein shall be binding

38

on, and shall inure to the benefit of any heir, executor, administrator, successor or assign of such entity.

6.12    Reservation of Rights

_____Except as expressly set forth herein, the Plan shall have no force or effect until the Court enter the confirmation order.  Nether the filing of the Plan, any statement or provision contained in the Disclosure Statement, nor the taking of any action by a Debtor or any other entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of: (1) Debtors with respect to the holder of claims or other entity; or (2) any holder of a Claim or other entity prior to the effect date of the Plan.

6.13    Further Assurances

_____The Debtor or the reorganized Debtor, as applicable, all holder of Claims receiving distributions under the Plan and all other entities shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provision and intent of the Plan or the confirmation order.

6.14    Severability

_____If, prior to confirmation of the Plan, any term or provision of the Plan is held by the Court to be invalid, void, or unenforceable, the Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of th term or provision held to be invalid, void or unenforceable, and such term or provision then will be applicable as altered or interpreted, *provided* that any such alteration or interpretation must be in form and substance reasonable acceptable to the Debtor and to the extent such alteration or interpretation affects the rights or treatment of holders of unsecured claims, such claim holder.

6.15    Return of Security Deposits

_____Unless the Debtor agrees otherwise in a written agreement or stipulation approved by the Court, all security deposits provided by the Debtor to any person or entity at any time after the petition date shall be returned to the Debtor within twenty (20) days after the date of confirmation, without deduction or offset of any kind.

6.16    Filing of Additional Documents

_____On or before the Effective date, the Debtor may file with the Court all agreements and other document that may be necessary or appropriate to effectuate and furth evidence the terms and condition

6.17    Captions

_____The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

///

1  ///
   ///
2  ///
   ///
3  ///

4  **ARTICLE VII**
   **DISCHARGE**

5

6  7.01    Discialo

7  _____Confirmation of this Plan does not discharge any debt provided for in this Plan until the court
8  grants a discharge on completion of all payments under this Plan, or as otherwise provided in
   §1141(d)(5) of the Code.  The Debtor will not be discharged from any debt excepted from discharge
9  under §523 of the Code, except as provided in Rule 4007(c)of the Federal Rules of Bankruptcy
   Procedure.

10

11 Dated: September___, 2012

12                                   Respectfully submitted,

13                                   _____

14                                   Arvind Agarwal

15                                   _____

16                                   Alka Agarwal

17

18

19

20

21

22

23

24

25

26

27

28

40

# Exhibit B

**Residential Property Owned by ARVIND and ALKA AGARWAL**

529 Calceterra Circle
Las Vegas, NV 89119

Value:                                                    ***$95,000.00***

537 Calcaterra Circle
Las Vegas, NV 89119

Value as Asserted by Debtor:                              ***$95,000.00***

Value as Asserted by Claim Holder                        $140,000.00

3370 South Pecos Rd.
Las Vegas, NV

Value:                                                    ***$94,000.00***

1852 Arbol Valley Way
Las Vegas, NV

Value:                                                    ***$44,000.00***

3939 Greenleaf Dr.
Las Vegas, NV 89121

Value:                                                    ***$100,00.00***

1582 Galena Dr
San Jose, CA 95121

Value:                                                    ***$325,00.00***

# EXHIBIT C

## LIQUIDATION ANALYSIS[2]

**A.    OVERVIEW**

      A chapter 11 plan cannot be confirmed unless the Bankruptcy Court determines that the plan is in the "best interests" of all holders of claims and interest that are impaired by the plan and that have not accepted the plan.  The "best interests" test requires a Bankruptcy Court to find either that (I) all members of an impaired class of claims or interests have accepted the plan or (ii) the plan will provide a member who has not accepted the plan with a recovery of property of a value, as of the effective date of the plan, that is not less than the amount that such holder would recover if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code.  The property in question here would have a liquidated value to its appraised value, less foreclosure costs and fees.

**B.    UNDERLYING ASSUMPTIONS AND DISCLAIMER**

      The liquidation analysis (the "Liquidation Analysis") was prepared in connection with the filing of the Debtor's Disclosure Statement and Plan.  All valuations and debt encumbrances are based on orders of this court and Proof of Claims filed by the respective claim holders with the exception of 537 Calcaterra Circle, Las Vegas, NV which Debtors anticipate valuing at the time of Confirmation.  It is worth noting that the automatic stay as to this asset has been vacated and the property is currently in the foreclosure process.

      The Debtor has prepared this Liquidation Analysis based on a hypothetical liquidation under Chapter 7 of the Bankruptcy Code.  The determination of the costs of, and proceeds from, the hypothetical liquidation of the Debtor's assets in a chapter 7 case is an uncertain process involving extensive use of estimates and assumption that, although considered reasonable by the Debtor, are inherently subject to significant business, economic, and competitive uncertainties and contingencies beyond the control of the Debtor and his legal advisors.  Inevitably, some assumptions in the Liquidation Analysis would not materialize in an actual Chapter 7 liquidation, and unanticipated events and circumstance could affect the ultimate results in an actual Chapter 7 liquidation.

      It is assumed, among other things, that the hypothetical liquidation under Chapter 7 would commence under the direction of a court-appointed trustee and continue for a period of time, during which time all of the Debtor's major assets would be sold or surrendered to his respective lien holders, and the cash proceeds, if any, net of liquidation related costs, would then be distributed to

---

[2]All capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Disclosure Statement.  To the extent that a definition of a term in the text of this Exhibit C to this Disclosure Statement and the definition of such term in the Disclosure Statement is inconsistent, the definition included in the Disclosure Statement shall control.

creditors in accordance with relevant law.

THE LIQUIDATION ANALYSIS IS NOT INTEND AND SHOULD NOT BE USED FOR ANY OTHER PURPOSE.  THE LIQUIDATION ANALYSIS DOES NOT PURPORT TO BE A VALUATION OF THE DEBTOR'S ASSETS AS A GOING CONCERN, AND THERE MAY BE A SIGNIFICANT DIFFERENCE BETWEEN THE LIQUIDATION ANALYSIS AND THE VALUES THAT MAY BE REALIZED IN AN ACTUAL LIQUIDATION.  THIS ANALYSIS ASSUMES "LIQUIDATION VALUES" BASED ON APPRAISALS, WHERE AVAILABLE, AND THE DEBTOR'S BUSINESS JUDGMENT, WHERE APPRAISALS ARE NOT AVAILABLE.

THE UNDERLYING FINANCIAL INFORMATION IN THE LIQUIDATION ANALYSIS WAS NOT COMPILED OR EXAMINED BY AN INDEPENDENT ACCOUNTANTS. NEITHER THE DEBTOR NOR HIS ADVISORS MAKE ANY REPRESENTATION OR WARRANTY THAT THE ACTUAL RESULTS WOULD OR WOULD NOT APPROXIMATE THE ESTIMATES AND ASSUMPTIONS REPRESENTED IN THE LIQUIDATION ANALYSIS. ACTUAL RESULTS COULD VARY MATERIALLY.   THIS ANALYSIS ASSUMES "LIQUIDATION VALUES" BASED ON APPRAISALS, WHERE AVAILABLE AND WHEN APPLICABLE, AND THE DEBTOR'S BUSINESS JUDGMENT, WHERE APPRAISALS ARE NOT AVAILABLE.

## C.    SUMMARY NOTES TO THIS LIQUIDATION ANALYSIS

The Liquidation Analysis should be read in conjunction with the following notes and assumptions:

1.    Dependence on Unaudited Financial Statements. This Liquidation Analysis contains estimates that are still under review and it remains subject to further legal and accounting analysis.

2.    Preference or Fraudulent Transfers.  No recovery or related litigation costs attributed to any potential avoidance actions under the Bankruptcy Code, including potential reference or fraudulent transfer actions are assumed within this analysis due to, among other issues, anticipated disputes about these matters.

3.    Duration of the Liquidation Process.   The Debtor has assumed that the liquidation would involve very little operations.  Thus this Liquidation Analysis assumes the liquidation would be completed within twelve (12) months.  In an actual liquidation the wind down process and time period(s) could vary thereby impacting recoveries. For example, the potential for priority, contingent and other claims, litigation, rejection costs and the final determination of allowed claims could substantially impact both the timing and amount of the distribution of the asset proceeds to the creditors.  Accordingly, there can be no assurance that the values reflected in this Liquidation Analysis would be realized if the Debtor was, in fact, to undergo such a liquidation.

43

**SUMMARY OF LIQUIDATION ANALYSIS (AS OF September 20, 2012)**

ARVIND AND ALKA AGARWAL
LIQUIDATION ANALYSIS

**Property 1**

529 Calcaterra Circle
Las Vegas, NV 89119

First Mortgage:                                    $196,928.16

Current Value:                                    ***$95,000.00***

Negative Equity:                                   ($101,928.16)

**Property 2**

537 Calcaterra Circle
Las Vegas, NV 89119

1ˢᵗ Mortgage                                       $143,463.48

Current Value Asserted by the Debtors              ***$95,000.00***

Current Value Assert by U.S. Bank[1]               $140,000.00

Negative Equity Asserted by Debtors                ($48,463.48)

Negative Equity Asserted by US Bank                ($3,463.48)

**Property 3**

3370 South Pecos Rd
Las Vegas, NV

1ˢᵗ Mortgage                                       $285,184.70

---

[1]The Valuation of this particular asset is current the subject of a Motion to Value.

Debtors expect valuation to be resolved at the time of confirmation.

| | |
|---|---|
| Current Value | ***$94,000.00*** |
| Equity | ($191,184.70) |

**Property 4**

1852 Arbol Valley Way
Las Vegas, NV 89119

| | |
|---|---|
| 1st Mortgage | $140,750.11 |
| 2nd Mortgage | $36,067.00 |
| Current Value | ***$44,000.00*** |
| Equity | ($132,817.11) |

**Property 5**

3939 Greenleaf Way
Las Vegas, NV 89121

| | |
|---|---|
| 1st Mortgage | $299,706.21 |
| Current Value | ***$100,000.00*** |
| Equity | ($199,706.21) |

**Property 6**

1582 Galena Dr
San Joe, Ca 95121

| | |
|---|---|
| 1st Mortgage | $205,548.19 |
| 2nd Mortgage | $191,610.21 |
| Current Value | ***$325,000.00*** |
| Equity | ($72,158.40) |

**Chapter 7 Liquidation Costs:** Pursuant to section 726 of the Bankruptcy Code, the allowed administrative expenses incurred by a Chapter 7 trustee, including but not limited to expenses affiliated with selling the Debtor's assets, will be entitled to payment in full prior to any distribution to Chapter 11 administrative and other priority claims. As the Debtor is an individual it is anticipated that creditor's recoveries would be limited to the values of the property for the secured claimants minus the expenses of the sale of the property itself and any applicable priority professional fees. It is further estimated that the 2nd mortgage on Property 3 would be extinguished and unsecured debts would be unpaid.

1
2
3

# EXHIBIT D

4
5

**Dependence on Assumptions.**  The Cash Flow Analysis is based on a number of estimates and assumptions that, although developed and considered reasonable by the Debtor's advisors, are inherently subject to significant economic, business, and competitive uncertainties and contingencies beyond the control of the Debtor.  The Cash Flow Analysis is also based on the Debtor's best judgment of how likely it is that he will be able to retain the same level of income throughout the life of his Plan and not have his workload and income reduced.  Accordingly, there can be no assurance that the cash flow estimates reflected in this Cash Flow Analysis would be realized if the Debtor was unable to maintain her current income and actual results could vary materially and adversely from those contained herein.

6
7
8
9
10
11

Furthermore it is important to note that the Debtor currently has the automatic stay lifted on his property located at 537 Calcaterra Circle, Las Vegas, NV.  Debtor has received a Notice of Default however is currently unaware of a date of Trustee Sale.  Debtor is also involved in a disbute over valuation of 537 Calcaterra Circle, Las Vegas, NV.  As such this Cash Flow Analysis shows alternate income and expenses based on (1) a retention of the asset at Debtor's valuation; (2) a retention of the asset at the Secured Creditor's Valuation; and (3) Cash Flow analysis if 537 Calcaterra Circle, Las Vegas, NV is sold.

12
13
14
15
16

For ease of reference this Exhibit is divided into sub parts as follows:

17

**Exhibit D(1)- Cash Flow Analysis of Debtor's with Retention of 537 Calcaterra Circle at Debtor's Valuation of $95,000.00**

18
19

**Exhibit D(2)- Cash Flow Analysis of Debtor's with Retention of 537 Calcaterra Circle at Secured Creditor's Valuation of $140,000.00**

20
21

**Exhibit D(3)- Cash Flow Analysis of Debtor's with Loss of 537 Calcaterra Circle**

22
23
24
25
26
27
28

46

# Exhibit D(1)

## Cash Flow Analysis of Debtor's with Retention of 537 Calcaterra Circle at Debtor's Valuation of $95,000.00

**DEBTOR'S CASH FLOW ANALYSIS**

**CURRENT INCOME AND EXPENSES**

**Monthly Income:**

| | |
|---|---|
| Monthly Income (net after taxes): | $4,450.00 |
| Current Rental Income: | $5,407.00[1] |
| Plan Contributions from Family: | $1,000.00[2] |

***Total Current Income:*** **$10,857.00**

**Prepetion Monthly Expenses Breakdown:**

Personal Expenses

| | |
|---|---|
| 1st Mortgage | $2,156.84 |
| 2nd Mortgage | $667.73 |
| Cell Phone | $150.00 |
| Living Expenses | $1,029.00 |
| Medical and Dental | $120.00 |
| Transportation and Insurance | $433.34 |
| Recreation | $150.00 |
| Cable/ Internet/ Phone | $120.00 |
| Water | $25.00 |
| Trash | $29.00 |
| Electricity | $140.00 |
| Life Insurance | --------- |

---

[1]It is worth noting that 537 Calcaterra Circle and 529 Calcaterra Circle are both commercial apartment units with six actual spaces available for rent. Currently the units are not leased out at capacity. *See* Ex. "F" Typically these units rent out at $375.00 per month. It is possible that Debtor's disposable income might thereby increase above what is currently stated. In that case Debtor will pay more money into the estate for the unsecured creditors based on full occupancy.

[2]Debtor contends that Debtor's Children are willing and able to supplement Debtor's Monthly Income and Debtor asserts this is proper. *See In Re Cheatham* 91 B.R. 377 (NC 1988) This will be done via "rent" payments to the Debtor from their children Aakash and Abhinay Agarwal.

47

| Charitable Contributions: | --------- |
| Child Support | --------- |
| Auto Payments | $ |
| Total | $5,020.91 |

Prepetition Monthly Expenses:
Rental Property Expenses:

| Property 1 | $1,168.61 |
| Property 2 | $805.00 |
| Property 3 | $1,030.89 |
| Property 4 | $973.26 |
| Property 5 | $1.326.89 |
| Maintenance and Repair Reserves | $300.00 |
| Water and Sewer Service | $345.00 |
| Trash Service | $134.00 |
| Electric Bill | $172.00 |
| HOA Dues | $210.00 |
| ***Total: Current Expenses*** | ***$6,465.04*** |
| Personal Expenses (with Second Mortgage): | $5,020.91 |

**Monthly Cash flow:**                                                                ($628.95)

**POTENTIAL INCOME AND EXPENSES**

Monthly Income:

| Monthly Income (net after taxes): | $4,450.00 |
| Current Rental Income: | $5,407.00[1] |
| Plan Contributions from Family: | $1,000.00[2] |

***Total Current Income:***         **$10,857.00**

---

[1]It is worth noting that 537 Calcaterra Circle and 529 Calcaterra Circle are both commercial apartment units with six actual spaces available for rent. Currently the units are not leased out at capacity. *See* Ex. "F" Typically these units rent out at $375.00 per month. It is possible that Debtor's disposable income might thereby increase above what is currently stated. In that case Debtor will pay more money into the estate for the unsecured creditors based on full occupancy.

[2]Debtor contends that Debtor's Children are willing and able to supplement Debtor's Monthly Income and Debtor asserts this is proper. *See In Re Cheatham* 91 B.R. 377 (NC 1988) This will be done via "rent" payments to the Debtor from their children Aakash and Abhinay Agarwal.

48

Monthly Expenses
Rental Property Expenses

| | |
|---|---|
| Property 1[3] | $787.80 |
| Property 2[4] | $797.69 |
| Property 3[5] | $623.66 |
| Property 4[6] | $335.90 |
| Property 5[7] | $677.70 |
| Maintenance and Repair Reserves | $300.00 |
| Water and Sewer Service | $345.00 |
| Trash Service | $134.00 |
| Electric Bill | $172.00 |
| HOA Dues | $210.00 |

***Total: Potential Expenses:***          ***$4,383.15***

Personal Expenses:          $5,215.92

**Cash Flow-**          **$1,257.93**

**Post-petition Monthly Personal Expenses Breakdown:**

| | |
|---|---|
| 1st Mortgage | $2,351.84 |
| 2nd Mortgage | $667.42 |
| Cell Phone | $150.00 |
| Living Expenses | $1,029.00 |
| Medical and Dental | $120.00 |
| Transportation and Insurance | $433.34 |
| Recreation | $150.00 |
| Cable/ Internet/ Phone | $120.00 |
| Water | $25.00 |
| Trash | $29.00 |
| Electricity | $140.00 |
| Life Insurance | --------- |
| Charitable Contributions: | --------- |
| Child Support | --------- |

[3] 529 Calcaterra Circle, Las Vegas, NV 89119

[4] 537 Calcaterra Circle, Las Vegas, NV 89119

[5] 3370 South Pecos Rd., Las Vegas, NV

[6] 1852 Arbol Verde Way, Las Vegas, NV 89119

[7] 3939 Greenleaf Dr., Las Vegas, NV 89120

| Auto Payments | $ |
|---|---|
| Total | $5,215.92 |

# Exhibit D(2)

## Cash Flow Analysis of Debtor's with Retention of 537 Calcaterra Circle at Debtor's Valuation of $140,000.00

**DEBTOR'S CASH FLOW ANALYSIS**

**CURRENT INCOME AND EXPENSES**

**Monthly Income:**

| | |
|---|---|
| Monthly Income (net after taxes): | $4,450.00 |
| Current Rental Income: | $5,407.00[1] |
| Plan Contributions from Family: | $1,000.00[2] |

***Total Current Income:*** **$10,857.00**

**Prepetion Monthly Expenses Breakdown:**
Personal Expenses

| | |
|---|---|
| 1st Mortgage | $2,156.84 |
| 2nd Mortgage | $667.73 |
| Cell Phone | $150.00 |
| Living Expenses | $1,029.00 |
| Medical and Dental | $120.00 |
| Transportation and Insurance | $433.34 |
| Recreation | $150.00 |
| Cable/ Internet/ Phone | $120.00 |
| Water | $25.00 |
| Trash | $29.00 |
| Electricity | $140.00 |
| Life Insurance | --------- |

---

[1]It is worth noting that 537 Calcaterra Circle and 529 Calcaterra Circle are both commercial apartment units with six actual spaces available for rent. Currently the units are not leased out at capacity. *See* Ex. "F" Typically these units rent out at $375.00 per month. It is possible that Debtor's disposable income might thereby increase above what is currently stated. In that case Debtor will pay more money into the estate for the unsecured creditors based on full occupancy.

[2]Debtor contends that Debtor's Children are willing and able to supplement Debtor's Monthly Income and Debtor asserts this is proper. *See In Re Cheatham* 91 B.R. 377 (NC 1988) This will be done via "rent" payments to the Debtor from their children Aakash and Abhinay Agarwal.

50

| Charitable Contributions: | --------- |
| Child Support | --------- |
| Auto Payments | $ |
| Total | $5,020.91 |

Prepetition Monthly Expenses:
Rental Property Expenses:

| Property 1 | $1,168.61 |
| Property 2 | $805.00 |
| Property 3 | $1,030.89 |
| Property 4 | $973.26 |
| Property 5 | $1.326.89 |
| Maintenance and Repair Reserves | $300.00 |
| Water and Sewer Service | $345.00 |
| Trash Service | $134.00 |
| Electric Bill | $172.00 |
| HOA Dues | $210.00 |
| ***Total: Current Expenses*** | ***$6,465.04*** |
| Personal Expenses (with Second Mortgage): | $5,020.91 |

_____

**Monthly Cash flow:**                                                                          **($628.95)**

**POTENTIAL INCOME AND EXPENSES**

Monthly Income:

| Monthly Income (net after taxes): | $4,450.00 |
| Current Rental Income: | $5,407.00[1] |
| Plan Contributions from Family: | $1,000.00[2] |

***Total Current Income:***          **$10,857.00**

_____

[1]It is worth noting that 537 Calcaterra Circle and 529 Calcaterra Circle are both commercial apartment units with six actual spaces available for rent. Currently the units are not leased out at capacity. *See* Ex. "F" Typically these units rent out at $375.00 per month. It is possible that Debtor's disposable income might thereby increase above what is currently stated. In that case Debtor will pay more money into the estate for the unsecured creditors based on full occupancy.

[2]Debtor contends that Debtor's Children are willing and able to supplement Debtor's Monthly Income and Debtor asserts this is proper. *See In Re Cheatham* 91 B.R. 377 (NC 1988) This will be done via "rent" payments to the Debtor from their children Aakash and Abhinay Agarwal.

Monthly Expenses
Rental Property Expenses

| | |
|---|---|
| Property 1[3] | $787.80 |
| Property 2[4] | $1,039.69 |
| Property 3[5] | $623.66 |
| Property 4[6] | $335.90 |
| Property 5[7] | $677.70 |
| Maintenance and Repair Reserves | $300.00 |
| Water and Sewer Service | $345.00 |
| Trash Service | $134.00 |
| Electric Bill | $172.00 |
| HOA Dues | $210.00 |

***Total: Potential Expenses:***            ***$4,625.75***

Personal Expenses:            $5,215.92

**Cash Flow-**                **$1,015.33**

**Post-petition Monthly Personal Expenses Breakdown:**

| | |
|---|---|
| 1st Mortgage | $2,351.84 |
| 2nd Mortgage | $667.42 |
| Cell Phone | $150.00 |
| Living Expenses | $1,029.00 |
| Medical and Dental | $120.00 |
| Transportation and Insurance | $433.34 |
| Recreation | $150.00 |
| Cable/ Internet/ Phone | $120.00 |
| Water | $25.00 |
| Trash | $29.00 |
| Electricity | $140.00 |
| Life Insurance | --------- |
| Charitable Contributions: | --------- |
| Child Support | --------- |

[3]529 Calcaterra Circle, Las Vegas, NV 89119

[4]537 Calcaterra Circle, Las Vegas, NV 89119

[5]3370 South Pecos Rd., Las Vegas, NV

[6]1852 Arbol Verde Way, Las Vegas, NV 89119

[7]3939 Greenleaf Dr., Las Vegas, NV 89120

| Auto Payments | $ |
|---|---|
| Total | $5,215.92 |

# Exhibit D(3)

## Cash Flow Analysis of Debtor's with Loss of 537 Calcaterra Circle

**DEBTOR'S CASH FLOW ANALYSIS**

**CURRENT INCOME AND EXPENSES**

**Monthly Income:**

| | |
|---|---|
| Monthly Income (net after taxes): | $4,450.00 |
| Current Rental Income: | $5,407.00[1] |
| Plan Contributions from Family: | $1,000.00[2] |

***Total Current Income:*** **$10,857.00**

**Prepetion Monthly Expenses Breakdown:**
Personal Expenses

| | |
|---|---|
| 1st Mortgage | $2,156.84 |
| 2nd Mortgage | $667.73 |
| Cell Phone | $150.00 |
| Living Expenses | $1,029.00 |
| Medical and Dental | $120.00 |
| Transportation and Insurance | $433.34 |
| Recreation | $150.00 |
| Cable/ Internet/ Phone | $120.00 |
| Water | $25.00 |
| Trash | $29.00 |
| Electricity | $140.00 |
| Life Insurance | --------- |
| Charitable Contributions: | --------- |

---

[1]It is worth noting that 537 Calcaterra Circle and 529 Calcaterra Circle are both commercial apartment units with six actual spaces available for rent. Currently the units are not leased out at capacity. *See* Ex. "F" Typically these units rent out at $375.00 per month. It is possible that Debtor's disposable income might thereby increase above what is currently stated. In that case Debtor will pay more money into the estate for the unsecured creditors based on full occupancy.

[2]Debtor contends that Debtor's Children are willing and able to supplement Debtor's Monthly Income and Debtor asserts this is proper. *See In Re Cheatham* 91 B.R. 377 (NC 1988) This will be done via "rent" payments to the Debtor from their children Aakash and Abhinay Agarwal.

53

| | |
|---|---|
| Child Support | --------- |
| Auto Payments | $ |
| Total | $5,020.91 |

Prepetition Monthly Expenses:
Rental Property Expenses:

| | |
|---|---|
| Property 1 | $1,168.61 |
| Property 2 | $805.00 |
| Property 3 | $1,030.89 |
| Property 4 | $973.26 |
| Property 5 | $1.326.89 |
| Maintenance and Repair Reserves | $300.00 |
| Water and Sewer Service | $345.00 |
| Trash Service | $134.00 |
| Electric Bill | $172.00 |
| HOA Dues | $210.00 |
| ***Total: Current Expenses*** | ***$6,465.04*** |
| Personal Expenses (with Second Mortgage): | $5.020.91 |

**Monthly Cash flow:**                                                              **($628.95)**

**POTENTIAL INCOME AND EXPENSES**

Monthly Income:

| | |
|---|---|
| Monthly Income (net after taxes): | $4,450.00 |
| Current Rental Income: | $4,282.00[1] |
| Plan Contributions from Family: | $1,000.00[2] |

***Total Current Income:***                    **$9,732.00**

Monthly Expenses
Rental Property Expenses

[1]It is worth noting that 529 Calcaterra Circle is a commercial apartment unit with six actual spaces available for rent.  Currently the unit is not leased out at capacity. *See* Ex. "F" Typically these units rent out at $375.00 per month.  It is possible that Debtor's disposable income might thereby increase above what is currently stated.  In that case Debtor will pay more money into the estate for the unsecured creditors based on full occupancy.

[2]Debtor contends that Debtor's Children are willing and able to supplement Debtor's Monthly Income and Debtor asserts this is proper.  *See In Re Cheatham* 91 B.R. 377 (NC 1988) This will be done via "rent" payments to the Debtor from their children Aakash and Abhinay Agarwal.

| | |
|---|---|
| Property 1[3] | $787.80 |
| Property 3[4] | $623.66 |
| Property 4[5] | $335.90 |
| Property 5[6] | $677.70 |
| Maintenance and Repair Reserves | $300.00 |
| Water and Sewer Service | $345.00 |
| Trash Service | $134.00 |
| Electric Bill | $172.00 |
| HOA Dues | $210.00 |

***Total: Potential Expenses:***                 ***$3,586.06***

Personal Expenses:                                   $5,215.92

**Cash Flow-**                                          **$930.02**

**Post-petition Monthly Personal Expenses Breakdown:**

| | |
|---|---|
| 1st Mortgage | $2,351.84 |
| 2nd Mortgage | $667.42 |
| Cell Phone | $150.00 |
| Living Expenses | $1,029.00 |
| Medical and Dental | $120.00 |
| Transportation and Insurance | $433.34 |
| Recreation | $150.00 |
| Cable/ Internet/ Phone | $120.00 |
| Water | $25.00 |
| Trash | $29.00 |
| Electricity | $140.00 |
| Life Insurance | --------- |
| Charitable Contributions: | --------- |
| Child Support | --------- |
| Auto Payments | $ |
| Total | $5,215.92 |

[3]529 Calcaterra Circle, Las Vegas, NV 89119

[4]3370 South Pecos Rd., Las Vegas, NV

[5]1852 Arbol Verde Way, Las Vegas, NV 89119

[6]3939 Greenleaf Dr., Las Vegas, NV 89120

# EXHIBIT E

**FEASIBILITY ANALYSIS**
**ARVIND AND ALKA ARGARWAL**

The court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

**A.    DEBTOR HAS THE ABILITY TO FUND THE PLAN AND TO MAKE FUTURE PLAN PAYMENTS AND OPERATE WITHOUT FURTHER REORGANIZATION.**

**i.    The Debtor is able to fund the initial costs that will be assessed on the effective date of the Plan.**

Pursuant to the initial plan of reorganization, the Debtor will not need any initial funds to fund the plan therefore the issue of funds of the date of the plan will be a non issue.

**ii.    The Debtor will be able to fund the plan throughout the life of the Plan.**

The Debtor's Cash Flow Analysis shows that the Debtor will have an average gross income of approximately $119,100.00 per calendar year for the life of the Plan. Debtor is currently receiving $4,4500.00 a month in a combination of employment income and temporary unemployment benefits. Debtor, Arvind Agarwal, is currently pursuing employment opportunities in order to continue to fund the plan.

With this net income in combination with the successful job search of Arvind Agarwal, the Debtor has a reasonable ability to absorb additional unforeseen costs or unforeseen losses of income in order to fund the Plan throughout the Plan's life without further reorganization. Furthermore Debtor has devoted an amount of $300.00 a month for a repair serve on his rental units.  This will further insulate the Debtor from any unforeseen vacancies and/ or repairs.

**YOU SHOULD CONSULT WITH YOUR ACCOUNTANT OR OTHER FINANCIAL ADVISOR IF YOU HAVE ANY QUESTIONS PERTAINING TO THESE PROJECTIONS.**

**B.    MEASURES TAKEN TO MINIMIZE THE RISKS TO DEBTOR'S SUCCESSFUL REORGANIZATION.**

**i.    The Debtor has successfully obtained lower values for their Real Property burdened by Class 1 Claims.**

Based on the Motion to Value and the Stipulations obtained, debtor has reduced the amount of his monthly mortgage payment and this will allow him to get his rental business. While it is true that the Debtor does have a lingering issue concerning the Valuation of 537 Calcaterra Circle, Debtor intends to value this property at the time of confirmation and furthermore, regardless of whether the Debtor applies the lower valuation of the Debtor or the

higher valuation of U.S. Bank, Debtor has reduced the mortgage payment on this property.

      ii.       **The Debtor can still fund the plan if 537 Calcaterra Circle is lost at a Foreclosure Sale.**

     As can be seen in Exhibit D(3); if 537 Calcaterra Circle is lost to the Debtor, then the Debtor still has enough disposable income to fund the plan.

**THE DEBTOR WILL KEEP A RESERVE OF CASH TO PAY FOR REPAIRS ON HER INVESTMENT PROPERTIES AND/ OR TO PAY MORTGAGE AND UTILITIES WHEN THEIR PROPERTIES ARE VACANT.**

     The Debtor will maintain a cash reserve to pay for expensive unforeseen repairs to her real properties.  This will be fund via a $300.00 dedicated payment to cash reserves as part of their rental business and fully accounted for in her monthly cash flow analysis.  As is customary in the rental business, something in the Debtor's rental properties may suddenly break down (for example, plumbing pipes or air conditioning systems), and this may force the Debtor to immediately pay for repairs in order to keep the property habitable for Debtor's tenants.  To further minimize this risk, the Debtor keeps her properties in good repair, and she has obtained the necessary insurances.  Furthermore, Debtor is renting these properties to responsible tenants who take care of the property.  Debtor also maintains Home Warranty Insurance on the property in the event of an unforseen need for a repair.

     This reserve will also be used to pay the mortgage and operational expenses when the properties are vacant.  It will also be used to quickly obtain responsible tenants to rent the property.  To further minimize this risk, the Debtor has leased the properties to responsible tenants who have stable jobs and who have a long record of timely monthly payments.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT F

### Leases and Executory Contracts to be Assumed
### Pursuant to the Plan

### ARVIND AND ALKA AGARWAL

**529 Calceterra Circle**
**Las Vegas, NV 89119**

Lease with Andres Villareal
Apartment F
October 15, 2012 until October 15, 2013
Rent Paid:      $357.00 per month

Lease with Oscar Alejandro Millan
Apartment E
May 1, 2012- October 1, 2012
Rent Paid:      $325.00 per month

Yesenia Alcocer
Apartment "C"
Month to Month Tenancy
Rent Paid:      $375 per month

Lease with Shirley Fosher
Apartment "B"
Month to Month Tenancy
Rent Paid:      $375.00

Monthly Income:            $1,432.00

**537 Calcaterra Circle**
**Las Vegas, NV 89129**

Lease with Nancy Shonk
Apartment "C"
July 1, 2012 to January 1, 2013
Rent Paid:      $375.00

Lease with Robert Burnard
Apartment "D"
September 5, 2012 until September 5, 2013
Rent Paid:      $375.00 per month

Lease with Jorge Luis Mora

58

Apartment "B"
Month to Month Tenancy
Rent Paid:        $375.00

Month to Month

Lease with Current Lessees as of Date of Plan Confirmation
Monthly Income:                $1,125.00

**3939 Greenleaf Dr.**
**Las Vegas, NV 89120**

Lease with Michele Bard[7]
July 1, 2012 to July 1, 2013
Rent Paid:        $1,075.00

Lease with Current Lessee as of Date of Plan Confirmation
Monthly Income:                $1,075.00

**3370 South Pecos Rd**
**Las Vegas, NV**

Julia Juarez-Ferdin and Luis Juarez
Month to Month Tenancy
Rent Paid:        $900.00

Lease with Current Lessee as of Date of Plan Confirmation
Monthly Income:                $900.00

1852 Arbol Verde Way
Las Vegas, NV 89119

Lease with Pesoz Martinez
June 1, 2012 until June 1, 2013
Rent Paid:        $875.00

Monthly Income:                $875.00

---

[7]This tenant has currently broken the lease and vacated the property.  Debtor expects to have a new tenant by September 31, 2012 at the above stated Rental Rate.

# EXHIBIT G

## HOW "CRAM-DOWN' UNDER 11 U.S.C. §1129 MAY BE APPLIED TO CERTAIN CREDITORS OF THIS CASE

### ARVIND AND ALKA AGARWAL

Under the "cram down" provision of 11 U.S.C. §1129, a class of creditors who do not accept the Plan may be forced to abide by the Plan if the Plan does not "discriminate unfairly" and is "fair  and equitable" toward the class of creditors who did not vote to accept the Plan.

The Debtor believes that there may be a need to "cram-down" the interest of creditors in Class 3, and maybe some of the creditors in Class 1.  There may be a need to "cram-down" the interests of the general unsecured creditors in Class 3 if they vote to not accept the Plan.  If so, under the "cram-down" these creditors will each receive their pro-rata share of the Debtor's monthly payment of $1,300.67 over 60 months under the Plan.  This proposed treatment does not discriminate unfairly and is fair and equitable because each and all creditors will receive a share proportional to the value of their claim as related to the total value of all Class 5 claims.

The "cram-down" of Class 1 claims may happen if the Class 1 Claim vote§1111(b) election, the claim will be entirely secured to the value of their lien according to the claimant's proof-of-claim or the Debtor's schedules.  The "cram-down" will apply to the interest-rate which the Debtor will pay at 0.00%.  If a Class 1 claimant does not make an §1111(b) election, the Plan will "cram down" the Class 1 claim according to the lower principal balance, and possibly the lower interest-rate and longer term as designated in the Plan.  The Class 1 claimant will also have a deficiency claim for the unsecured deficiency portion of its claim against the Debtor.  If there is a "cram-down" of this Class, it will not discriminate unfairly and will be fair equitable toward the Class.  Under a "cram-down", each Class 1 claimant will receive the same treatment proportional to their claim if they make their §1111(b) election.  Each Class 1 claimant will also receive the same treatment proportional to their claim if they do not make their §1111(b)election.

_____**YOU SHOULD CONSULT YOUR OWN ATTORNEY IF A "CRAM-DOWN" CONFIRMATION WILL AFFECT YOUR CLAIM OR EQUITY INTEREST, AS THE VARIATION ON THIS GENERAL ARE NUMEROUS AND COMPLEX.___**