**MATTHEW Q. CALLISTER, ESQ**
Nevada Bar No. 001396
mqc@call-law.com
**THOMAS N. BECKOM, ESQ**
Nevada Bar No. 12554
beckomt@call-law.com
CALLISTER & ASSOCIATES, LLC
823 Las Vegas Blvd., South, Suite 500
Las Vegas, NV 89101
Telephone: (702) 385-3343
Facsimile: (702) 385-2899
E-Mail: beckomt@call-law.com
Attorney for Debtor, *Arvind and Alka Agarwal*

E-FILED: May 30, 2013

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>ARVIND AGARWAL and ALKA AGARWAL,<br><br>        Debtors. | Case No.  11-17763-lbr<br>Chapter 11<br><br>Hearing date:<br>Time: |

### THIRD PLAN OF REORGANIZATION OF ARVIND AND ALKA AGARWAL

### ARTICLE I-SUMMARY

This Plan of Reorganization (the "Plan") under Chapter 11 of the Untied states Bankruptcy Code, 11 USC §§101 *et seq* (the **"Bankruptcy Code")** proposes to pay creditors of **ARVIND and ALKA AGARWAL,** the above-captioned debtors and debtors-in-possession (the "**Debtors**") from the reorganization of his residential property and secured debt.

This Plan provides for 9 classes of secured claims; and 2 classes of unsecured claims. Unsecured creditors holding allowed claims will receive distributions, which the Debtor has valued at approximately **$1,030.02** per month of each creditor's allowed claim to be distributed in their respective shares.  This Plan also provides for the payment of administrative and priority claims in full on the effective date of this Plan, or as agreed by the holder of such administrative or priority claim.

All creditors should refer to Article II through IV of this Plan for information regarding the precise treatment of their claims.  A Disclosure Statement (the "**Disclosure Statement**") that provides more detailed information regarding this Plan and the rights of creditors was circulated with this Plan.  You rights may be affected.  You should read these papers carefully and discuss them with you attorney.  If you do not have an attorney, you may wish to consult one.

## ARTICLE II-CLASSIFICATION AND TREATMENT OF CLAIMS

This Plan constitutes the Chapter 11 plan of reorganization of the Debtor.  All Claims against the Debtor are placed in classes (each a "Class")

**A.    Classification of Claims**

2.01    Class 1-Secured Claim of CITY NATIONAL BANK

(a)    Classification:   Class 1 consists of the Secured Claims of City National Bank against the Debtor's property located at 529 Calcaterra Circle, Las Vegas, NV 89119, which is secured by a lien against the Debtor's residential rental property, loan number xxxxxx-0019

(b)    *Treatment*:  The holder of an allowed Class 1 secured Claim shall be impaired and paid on a new principal loan amount of $95,000.00 with a fixed interest rate of 5.00% for thirty years, amortized over thirty years, and monthly payments of $687.80 with taxes and impounded by the lender included in this estimated payment. Insurance shall be de-escrowed and paid separately.

(c)    *Valuation:*  Class 1 claims are valued at $95,000.00

(d)    *Unsecured Portion of the Claim:*   Any amount of a Class 1claim that is deemed to be unsecured in accordance with section 1(c) shall be afforded treatment set forth in Class 9 below.

(e)    *Voting:*  Class 1  is an impaired class, and the holder of the Class 1(a) claim is entitled to vote to accept or reject the Plan

2.02    Class 2-Secured Claim of BANK OF AMERICA, SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING

(a)    Classification:   Class 2 consists of the Secured Claim U.S. Bank National Association against the Debtor's investment property located at 3370 South Pecos Rd, Las Vegas,  NV 89, which is secured by a lien against the Debtor's residential rental property.

(b)    *Treatment*:  The holder of an allowed Class 2 secured Claim shall be impaired and Debtor will pay the principal balance of $94,000.00  at a new interest rate of 5.00%.  Debtor will make monthly payments in the amount of $623.66 amortized over 30 years with taxes and insurance impounded by the lender and included in this estimated payment.

(c)    *Valuation:*  Class 2 shall be valued at $94,000.00

(d)    *Unsecured Portion of the Claim:   :*  Any amount of a Class 2 claim that is deemed to be unsecured in accordance with section 3(c) shall be afforded treatment set forth in Class 9 below.

(e)    *Voting:*  Class 2  is an impaired class, and the holder of the Class 2 claim is entitled to vote

to accept or reject the Plan

2.03    Class 3-Secured Claim of BAC HOME LOANS SERVICING, L.P.

(a)    Classification: Class 2 consists of the Secured Claim of BAC HOME LOANS SERVICING against the Debtor's investment property located at 1852 Arbol Verde Way, Las Vegas, NV 89119, which is secured by a lien against the Debtor's residential rental property.

(b)    *Treatment*:  The holder of an allowed Class 4 secured Claim shall be impaired and Debtor will pay the principal balance of $44,000.00  at a new interest rate of 5.00%.  Debtor will make monthly payments in the amount of $335.90 amortized over 30 years with taxes and insurance impounded by the lender and included in this estimated payment.

(c)    *Valuation:*  Class 4 shall be valued at $44,000.00

(d)    *Unsecured Portion of the Claim:  :*  Any amount of a Class 4 claim that is deemed to be unsecured  shall be afforded treatment set forth in Class 9 below.

(e)    *Voting:*  Class 4  is an impaired class, and the holder of the Class 4 claim is entitled to vote to accept or reject the Plan

2.04    Class 4-Secured Claim of BANK OF AMERICA, N.A.

(a)    Classification: Class 4 consists of the Secured Claim of BANK OF AMERICA N.A. against the Debtor's investment property located at 3939 Greenleaf Drive, Las Vegas, NV 89121, which is secured by a lien against the Debtor's residential rental property.

(b)    *Treatment*:  The holder of an allowed Class 4 secured Claim shall be impaired and Debtor will pay the principal balance of $100,000.00  at a new interest rate of 5.00%.  Debtor will make monthly payments in the amount of $677.70 amortized over 30 years with taxes and insurance impounded by the lender and included in this estimated payment.

(c)    *Valuation:*  Class 4 shall be valued at $100,000.00

(d)    *Unsecured Portion of the Claim:  :*  Any amount of a Class 1(e) claim that is deemed to be unsecured in accordance with section 1(e) shall be afforded treatment set forth in Class 9 below.

(e)    *Voting:*  Class 4  is an impaired class, and the holder of the Class 5 claim is entitled to vote to accept or reject the Plan

2.05    Class 5-Secured Claim of AURORA LOAN SERVICES, LLC

(a)    Classification:   Class 5 consists of the Secured Claim of AURORA LOAN SERVICES against the Debtor's property located at 1582 Galena Dr., San Jose 95121 , which is secured by a lien against the Debtor's residential property.

(b)    *Treatment*:  The holder of an allowed Class 5 secured Claim shall be unimpaired and Debtor

will pay the principal balance of $205,548.19 at a new interest rate of 5.00%. Debtor will make monthly payments in the amount of $2,156.84 amortized over 30 years with taxes and insurance impounded by the lender and included in this estimated payment.

(c)    *Valuation:*    Class 5 shall be valued at $205,548.19

(d)    *Unsecured Portion of the Claim:    :*    Class 5 claims are deemed fully secured.

(e)    *Voting:*    Class 5 is an unimpaired class, and the holder of the Class 5 claim is not entitled to vote to accept or reject the Plan

2.06    Class 6-Secured Claim of BANK OF THE WEST

(a)    Classification:  Class 6 consists of the Secured Claim of BANK OF THE WEST against the Debtor's property located at 1582 Galena Dr., San Jose 95121 , which is secured by a lien against the Debtor's residential property.

(b)    *Treatment*:  The holder of an allowed Class 6 secured Claim is deemed fully secured at an amount of $191,610.21**.** The Debtor will pay this obligation in accordance with the pre-petition contract.

(c)    *Valuation:*    Class 6 shall be valued at $191,610.21

(d)    *Unsecured Portion of the Claim:    :*    No amount of Class 6 is deemed unsecured.

(e)    *Voting:*    Class 6 is an impaired class, and the holder of the Class 6 claim is entitled to vote to accept or reject the Plan

2.07    Class 7-Secured Claim of REPUBLIC SERVICES

(a)    Classification:    Class 7 consists of the Secured Claim of REPUBLIC SERVICES.

(b)    *Treatment*:  The holder of an allowed Class7 secured Claim shall be impaired and but will be paid in full at a payment amount of $5.28 a month for 60 months.

(c)    *Valuation:*    Class 7 shall be valued at $316.78

(d)    *Unsecured Portion of the Claim:    :*    Any amount of a Class 7 claim that is deemed to be unsecured in accordance with section 3 shall be afforded treatment set forth in Class 9 below.

(e)    *Voting:*    Class 7 is an impaired class, and the holder of the Class 8 claim is entitled to vote to accept or reject the Plan

2.08    Class 8-Secured Claim of GREENTREE HOMEOWNERS ASSOCIATION

(a)    Classification:    Class 8 consists of the Secured Claim of GREENTREE HOMEOWNERS ASSOCIATION against the Debtor's property located at 1852 Arbol Verde, Las Vegas, NV, which is secured by a statutory lien against the Debtor's residential property.

4

(b)    *Treatment*:  The holder of an allowed Class 8 secured Claim shall be impaired and be paid over 4 ½  years in full, with a monthly payment of $281.76 for 54 months in the 7th through 60th Month of the Plan..

(c)    *Valuation:*  Class 8 shall be valued at $15,214.97

(d)    *Unsecured Portion of the Claim:  :*  No amount of Class 8 will be deemed unsecured.

(e)    *Voting:*  Class 8 is an impaired class, and the holder of the Class 8 claim is entitled to vote to accept or reject the Plan

     2.09    Class 9-General Unsecured Claims of the Debtors and Wholly Unsecured First & Second Lien Holder and General Unsecured Creditors

(a)    *Classification:*  Class 9 consists of general unsecured claims of the Debtors and the Wholly Unsecured Claims of the Debtors First & Second Liens Holders.

(b)    *Treatment:*  Holder of allowed General Unsecured Claims of the Debtors and Wholly Unsecured First & Second Lenders shall receive, in full and final satisfaction of such allowed Class 10 claims, their pro rata share of the Debtors monthly plan payments, which the Debtors estimates to be $327.49 for 6 months and $100.00 per month  for 54 months in months 7-60 of the plan.

(c)    *Voting:*  Class 10  is impaired and holders of Class 10 claims are entitled to vote to accept or reject the plan.

2.10    Class 10-The Claim of City National Bank as to Debtor's Interest in the Pending Federal Case 2:11-cv-01384-LDG-CWH Agarwal et al. V. Oregon Mutual Insurance Company

(a)    *Classification:*  Class 11 consists of the unsecured claim of City National Bank against any settlement and/ or judgment reached in the Pending Federal Case 2:11-cv-01384-LDG-CWH Agarwal et al. V. Oregon Mutual Insurance Company

(b)    *Treatment:*  Debtor will placed any funds received from this case into a control account and Debtor will be allowed to expense the account for any out of pocket expenses he has accrued during the course of the rehabilitation of 529 Calcaterra Circle, Las Vegas, NV.

(c)    *Voting:*  Class 10  is impaired and holders of Class 10 claims are entitled to vote to accept or reject the plan.

**ARTICLE III**

**TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, U.S. TRUSTEES FEES AND PRIORITY TAX CLAIMS**

3.01    <u>Unclassified Claims.</u>  In accordance with section 1123(a)(1) of the Bankruptcy Code, administrative expense claims, and priority tax claims are not in classes.

3.02    <u>Administrative Expense Claims.</u>     <u>Each holder of an administrative expense claim allowed</u>

under Section 503 of the Bankruptcy Code will be paid through a combination of a prepetition retainer and through the Debtor's plan of reorganization. The Debtor's only administrative claim to date is the claim of the Debtor's attorney, Callister & Associates. The Debtor currently estimates that approximately $54,643.85 in administrative expenses have either accrued and/ or will accrue through the course of the litigation of this bankruptcy. When accounting for the pre-petition retainer of $12,000.00; Debtor outstanding fees of $42,643.85 to pay through his Chapter 11 Plan. As such Debtor estimates that Debtor will pay $411.46 per month for 60 months towards these administrative expenses and $1,000.00 for 6 months in months 61-66 in full satisfaction of these claims.

3.03    Priority Tax Claims.   Each holder of a priority tax claim will be paid in full over 60 months with plan payments as follows:

| Creditor | Amount of Claim | Proposed Plan Treatment |
|---|---|---|
| Internal Revenue Service P.O. Box 7346 Philadelphia, PA 19101 | $3,513.60 | Paid in full over 60 months with a Plan Payment of $58.56 a Month |
| Internal Revenue Service P.O. Box 7346 Philadelphia, PA 19101 | $410.86 | Paid in Full Over 60 Months with a Monthly Plan Payment of $6.85 |
| Clark County Treasurer 500 South Grand Central Pky PO Box 551220 Las Vegas, NV 89155<br><br>Property Taxes for 529 Calcaterra Circle | $9,966.29 | Paid in Full over 60 Months with a Monthly Plan Payment of $166.11. |
| Clark County Assessor P.O. Box 551401 Las Vegas, NV 89155 | $67.82 | Paid in Full at the Outset of the Plan |

3.04    United States Trustee Fees. All fees required to be paid by 28 USC §1930 will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code.  Any U.S. Trustee Fees owed on or before the effective date of this Plan will be paid on the effective date. Debtor will maintain a reserve for the first 180 days post-confirmation to pay for Trustee Fees until the case is closed.  Estimated reserve payments are $108.34 for 6 months until the case is closed.

# ARTICLE IV
## PROVISIONS FOR EXECUTORY CONTRACT AND UNEXPIRED LEASES

4.01    Assumed Executory Contracts and Unexpired Leases.

(a) The Debtor shall assume, on the effective date of this Plan, the executory contract and unexpired

6

leases listed on **Exhibit F** attached hereto. Listed on **Exhibit F** is also the Debtor's estimated cure amount, if any, necessary to assume such contract in accordance with section 365 of the Bankruptcy Code.

(b) The Debtor will be conclusively deemed to have rejected all executory contracts and/ or unexpired lease not expressly assumed under section 4.01(a). A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than thirty (30) days after the date of the order confirming this Plan.

(c) The confirmation order shall constitute an order of the Bankruptcy Court approving such assumptions pursuant to sections 365 and 1123 of the Bankruptcy Code as of the effective date of this Plan. The Debtor reserves the right to amend **Exhibit F** at any time before the effective date.

(d) Any objection by a party to an executory contract or unexpired lease to the Debtor's proposed assumption or any related cure amount set forth on **Exhibit F** must be filed, served, and actually received by the Debtor at least five (5) days prior to the confirmation hearing of this Plan. Any party to an executory contract or unexpired lease that fails to object timely to the proposed cure amount will be deemed to have consented to such assignment of its executory contract or unexpired lease. The confirmation order shall constitute an order of the Bankruptcy Court approving any proposed assignments of executory contracts or unexpired lease pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.

(e) In the even of a dispute regarding (I) the amount of any cure payment, (ii) the ability of the Debtors to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under executory contract or unexpired lease to be assigned or (iii) any other matter pertaining to assignment, the applicable cure payment required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a final order or orders resolving the dispute and approving the assumption. If an objection to a cure amount is sustained by the Bankruptcy Court, the Debtor at his sole option may elect to reject such executory contract or unexpired lease in lieu of assuming and assigning it.

### ARTICLE V -MEANS FOR IMPLEMENTATION OF THE PLAN

5.01    Source of Payment. Payments and distribution under the Plan will be funded by the Debtor, based upon his (a) projected monthly income and (b) projected rental income from his business. The Liquidation Analysis attached in the Disclosure Statement as **Exhibit C,** outlines the Debtor's sources and uses of income. The Debtor's monthly Plan payment shall be **$1,300.67**

5.02    Method of Plan Payments

(a)    Debtor will personally issue payment to all creditors on the contractual due date being the following month after Plan Confirmation.

(b)    Except as otherwise provided in the Plan, or upon the entry of a final, non-appealable order of the Bankruptcy Court, or as agreed to by relevant parties, distributions under the Plan on account of a disputed claim that becomes an allowed claim after the effective date of the Plan shall begin on the regular monthly payment date.

7

(c)     Notwithstanding anything in the Plan to the contrary, and except as otherwise agreed to by the relevant parties, no partial payments and no partial distribution shall be made with respect to a disputed claim until all such disputes in connection with such disputed claim have been resolved by settlement among the parties or a final order of the Bankruptcy Court.

5.03 <u>Ownership of the Properties</u>.

All properties will remain in the name of the Debtor.

5.04    <u>Post-confirmation Management</u>

_____The Debtor will manage his properties post-petition in the ordinary course.  He will be authorized to enter into, terminate renew lease agreements as she sees fit.  Such activities will include retaining management companies to aid in the renting of his property, drafting and serving eviction notices, negotiating loan modifications or refinancing his properties, repairing the properties and maintaining a reserve account of up to one month's mortgage payments, or $10,000; whichever is greater.

**ARTICLE VI**
**GENERAL PROVISIONS**

6.01    <u>Definition and Rules of Construction</u>

The definitions and rules of construction set forth in Sections 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan.

6.02    <u>Effective Date of the Plan</u>

_____The effective date of this Plan is the eleventh business day following the date of entry of the confirmation order.  But if a stay of the confirmation order is in effect on that date, the effective date will be the first business day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

6.03    <u>Modification of the Plan</u>

_____The Debtor may modify the Plan at any time before confirmation of the Plan.  The Court however may require a New Disclosure Statement and/ or re-voting on the Plan.  The Debtor may also seek to modify the Plan at any time after confirmation only if (A) the Plan has been substantially consummated and (B) the Court authorizes the proposed modification after notice and a hearing.

Upon request of any Party, the Plan may be modified at any time after confirmation of the Plan, but before the completion of payments under the Plan to (1) increase or reduce the amount of payments under the Plan on claims of a particular class, (2) extend or reduce the time period for such payments, or (3) alter the amount of distribution to a creditor whose claim is provided for by the Plan to extent necessary to take on accounting of any payment of a claim made other than under the Plan.

Effective as of the date hereof and subject to the limitations and rights contained in the Plan: (a) the Debtor reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules,

8

to amend or modify the Plan prior to the entry of the confirmation order; and (b) after the entry of the confirmation order, the Debtor may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code or remedy any defect or omission ro reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

6.04    Final Decree

_____Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Debtor, or such other party as the Court shall designate in the Plan confirmation order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such a final decree on its own motion.

6.05    Vesting of Assets in the Reorganized Debtors and the Holding Company

_____After confirmation of the Plan, all property of the Debtor shall vest in the reorganized Debtor and the Holding Company, free and clear of all liens, claims, charges or other encumbrances, except those enumerated in the order approving the Motion to Value, Joint Stipulation, and the confirmation order.  The reorganized Debtor may operate his business and may use, acquire, or dispose of property and compromise or settle any claims without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the Confirmation Order.  Without limiting the foregoing, the Debtor shall pay charges that he incurs after confirmation for professionals' fees, disbursements, expenses or related support services (including reasonable fees relating to the preparation of professional fee applications) without application to the Bankruptcy Court.

6.06    Release of Liens, Claims and Equity Interests

Except as otherwise provided herein or in any contract, instrument, release or other agreement or document enter into or delivered in connection with the Plan, when all plan payment have been made, all junior liens, claims, mortgages, deeds of trust, or other security interests against the property of the Debtor's estate shall be fully release and discharged.  The security interests of the Debtor's first lien holders however, shall be unimpaired under the Plan with respect to both the Debtor and his property.

6.07    Certificate of Incorporation and Bylaws

_____The articles of organization and bylaws (or other formation documents) of any holding company shall be amended as may be required to be consistent with the provisions of the Plan and the Bankruptcy Code or as otherwise required by, and in a form reasonably acceptable to the Debtor.

6.08    Effectuating Documents; Further Transactions

_____The Debtor may take all actions to execute, deliver, file or record such cotnracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provision of the Plan.

6.09    Exemption from Certain Transfer Taxes

9

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of proeprty pursuant to the Plan shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the confirmation order shall direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.

6.10    Revocation of the Plan

The Debtor reserves the rights to revoke or withdraw the Plan prior to the confirmation hearing and to file subsequent Chapter 11 plans.  If the Debtor revokes or withdraws the Plan, or if confirmation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts or Unexpired Lease effected by the Plan and any document or agreement execute pursuant hereto shall be deemed null and void except as may be set forth a separate order entered by the Court; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims by or against the Debtor or any other entity; (b) prejudice in any manner the rights of the Debtor or any other entity; or (c)constitute an admission, acknowledgment, offer or undertaking of any sort by the Debtor or any other entity.

6.11    Successors and Assigns

The rights, benefits and obligations of any entity named or referred to herein shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign of such entity.

6.12    Reservation of Rights

Except as expressly set forth herein, the Plan shall have no force or effect until the Court enter the confirmation order.  Nether the filing of the Plan, any statement or provision contained in the Disclosure Statement, nor the taking of any action by a Debtor or any other entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of: (1) Debtors with respect to the holder of claims or other entity; or (2) any holder of a Claim or other entity prior to the effect date of the Plan.

6.13    Further Assurances

The Debtor or the reorganized Debtor, as applicable, all holder of Claims receiving distributions under the Plan and all other entities shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provision and intent of the Plan or the confirmation order.

6.14    Severability

If, prior to confirmation of the Plan, any term or provision of the Plan is held by the Court to be invalid, void, or unenforceable, the Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of th term or provision held to be invalid, void or unenforceable, and such term or

provision then will be applicable as altered or interpreted, *provided* that any such alteration or interpretation must be in form and substance reasonable acceptable to the Debtor and to the extent such alteration or interpretation affects the rights or treatment of holders of unsecured claims, such claim holder.

6.15    <u>Return of Security Deposits</u>

_____Unless the Debtor agrees otherwise in a written agreement or stipulation approved by the Court, all security deposits provided by the Debtor to any person or entity at any time after the petition date shall be returned to the Debtor within twenty (20) days after the date of confirmation, without deduction or offset of any kind.

6.16    <u>Filing of Additional Documents</u>

_____On or before the Effective date, the Debtor may file with the Court all agreements and other document that may be necessary or appropriate to effectuate and further evidence the terms and condition

6.17    <u>Captions</u>

_____The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

**ARTICLE VII**
**DISCHARGE**

7.01    <u>Discharge</u>

_____Confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments under this Plan, or as otherwise provided in §1141(d)(5) of the Code.  The Debtor will not be discharged from any debt excepted from discharge under §523 of the Code, except as provided in Rule 4007(c)of the Federal Rules of Bankruptcy Procedure.

Dated: May 30, 2012

                                        Respectfully submitted,

                                        /s/ Arvind Agarwal_____
                                        Arvind Agarwal


                                        /s/ Alka Agarwal   _____
                                        Alka Agarwal

# EXHIBIT D

**Dependence on Assumptions.**  The Cash Flow Analysis is based on a number of estimates and assumptions that, although developed and considered reasonable by the Debtor's advisors, are inherently subject to significant economic, business, and competitive uncertainties and contingencies beyond the control of the Debtor.  The Cash Flow Analysis is also based on the Debtor's best judgment of how likely it is that he will be able to retain the same level of income throughout the life of his Plan and not have his workload and income reduced.  Accordingly, there can be no assurance that the cash flow estimates reflected in this Cash Flow Analysis would be realized if the Debtor was unable to maintain her current income and actual results could vary materially and adversely from those contained herein.

Furthermore it is important to note that the Debtor currently has the automatic stay lifted on his property located at 537 Calcaterra Circle, Las Vegas, NV.  Debtor has received a Notice of Default however is currently unaware of a date of Trustee Sale.  Debtor is also involved in a disbute over valuation of 537 Calcaterra Circle, Las Vegas, NV.  As such this Cash Flow Analysis shows alternate income and expenses based on (1) a retention of the asset at Debtor's valuation; (2) a retention of the asset at the Secured Creditor's Valuation; and (3) Cash Flow analysis if 537 Calcaterra Circle, Las Vegas, NV is sold.

# Exhibit D

**Cash Flow Analysis**

**DEBTOR'S CASH FLOW ANALYSIS**

**CURRENT INCOME AND EXPENSES**

**Monthly Income:**

| | |
|---|---|
| Monthly Income (net after taxes): | $4,450.00 |
| Current Rental Income: | $5,407.00 |
| Plan Contributions from Family: | $1,000.00[1] |

***Total Current Income:*** **$10,857.00**

**Prepetion Monthly Expenses Breakdown:**

Personal Expenses

| | |
|---|---|
| 1st Mortgage | $2,156.84 |
| 2nd Mortgage | $667.73 |
| Cell Phone | $150.00 |
| Living Expenses | $1,029.00 |
| Medical and Dental | $120.00 |
| Transportation and Insurance | $433.34 |
| Recreation | $150.00 |
| Cable/ Internet/ Phone | $120.00 |
| Water | $25.00 |
| Trash | $29.00 |
| Electricity | $140.00 |
| Life Insurance | --------- |
| Charitable Contributions: | --------- |
| Child Support | --------- |
| Auto Payments | $ |
| Total | $5,020.91 |

Prepetition Monthly Expenses:

Rental Property Expenses:

| | |
|---|---|
| Property 1 | $1,168.61 |
| Property 2 | $805.00 |
| Property 3 | $1,030.89 |
| Property 4 | $973.26 |

---

[1]Debtor contends that Debtor's Children are willing and able to supplement Debtor's Monthly Income and Debtor asserts this is proper.  *See In Re Cheatham* 91 B.R. 377 (NC 1988) This will be done via "rent" payments to the Debtor from their children Aakash and Abhinay Agarwal.

13

| | |
|---|---|
| Property 5 | $1.326.89 |
| Maintenance and Repair Reserves | $300.00 |
| Water and Sewer Service | $345.00 |
| Trash Service | $134.00 |
| Electric Bill | $172.00 |
| HOA Dues | $210.00 |
| ***Total: Current Expenses*** | ***$6,465.04*** |
| Personal Expenses (with Second Mortgage): | $5.020.91 |

----

**Monthly Cash flow:**                                                           **($628.95)**

## POTENTIAL INCOME AND EXPENSES

Monthly Income:

| | |
|---|---|
| Monthly Income (net after taxes): | $4,450.00 |
| Current Rental Income: | $4,282.00[1] |
| Plan Contributions from Family: | $1,000.00[2] |

***Total Current Income:***        **$9,732.00**

Monthly Expenses
Rental Property Expenses

| | |
|---|---|
| Property 1[3] | $787.80 |
| Property 3[4] | $623.66 |
| Property 4[5] | $335.90 |

----

[1] It is worth noting that 529 Calcaterra Circle is a commercial apartment unit with six actual spaces available for rent.  Currently the unit is not leased out at capacity. *See* Ex. "F" Typically these units rent out at $375.00 per month.  It is possible that Debtor's disposable income might thereby increase above what is currently stated.  In that case Debtor will pay more money into the estate for the unsecured creditors based on full occupancy.

[2] Debtor contends that Debtor's Children are willing and able to supplement Debtor's Monthly Income and Debtor asserts this is proper.  *See In Re Cheatham* 91 B.R. 377 (NC 1988) This will be done via "rent" payments to the Debtor from their children Aakash and Abhinay Agarwal.

[3] 529 Calcaterra Circle, Las Vegas, NV 89119

[4] 3370 South Pecos Rd., Las Vegas, NV

[5] 1852 Arbol Verde Way, Las Vegas, NV 89119

| | |
|---|---|
| Property 5[6] | $677.70 |
| Maintenance and Repair Reserves | $300.00 |
| Water and Sewer Service | $345.00 |
| Trash Service | $134.00 |
| Electric Bill | $172.00 |
| HOA Dues | $210.00 |

***Total: Potential Expenses:***            ***$3,586.06***

Personal Expenses:                    $5,115.92

**Cash Flow-**                        **$1,030.02**

**Post-petition Monthly Personal Expenses Breakdown:**

| | |
|---|---|
| 1st Mortgage | $2,351.84 |
| 2nd Mortgage | $667.42 |
| Cell Phone | $150.00 |
| Living Expenses | $979.00 |
| Medical and Dental | $120.00 |
| Transportation and Insurance | $433.34 |
| Recreation | $100.00 |
| Cable/ Internet/ Phone | $120.00 |
| Water | $25.00 |
| Trash | $29.00 |
| Electricity | $140.00 |
| Life Insurance | --------- |
| Charitable Contributions: | --------- |
| Child Support | --------- |
| Auto Payments | $ |
| Total | $5,115.92 |

---

[6]3939 Greenleaf Dr., Las Vegas, NV 89120